**AIKEN SCHENK HAWKINS & RICCIARDI P.C.**
4742 North 24th Street
Suite 100
Phoenix, Arizona 85016-4859
Telephone: (602) 248-8203
Facsimile: (602) 248-8840
D. Lamar Hawkins – 013251
E-Mail: dlh@hs-law.com
Attorneys for Debtors

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| ATOMIC PEST CONTROL LLC, an Arizona limited liability company, | Case No. 2-09-bk-07232-RJH |
| Debtor. | **EMERGENCY MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL** |
| Address: 1755 S. Recker Rd. Mesa, AZ 85206 | |
| Tax ID: 90-0279948 | |

Atomic Pest Control LLC, debtor and debtor-in-possession herein (the "Debtor"), by and through its attorneys Aiken Schenk Hawkins & Ricciardi P.C., requests this Court enter an order pursuant to Bankruptcy Code section 363 and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure authorizing the use of cash collateral on an interim and final basis. A proposed preliminary budget is attached hereto as Exhibit "A" (the "Budget"). This Motion is supported by the attached Memorandum of Points and Authorities.

DATED this 17 day of April, 2009.

AIKEN SCHENK HAWKINS & RICCIARDI P.C.

By
D. Lamar Hawkins
4742 North 24th Street
Suite 100
Phoenix, Arizona 85016-4859
Attorneys for Debtor

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    Jurisdiction and Venue

1.    This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1344.

2.    This matter constitutes a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M).

3.    Venue of this proceeding and the Motion is proper in the District of Arizona pursuant to 28 U.S.C. §§ 1408 and 1409.

### II.   Factual Background

The factual and procedural background pertinent to this emergency motion may be summarized as follows:

1.    Atomic Pest Control LLC, an Arizona limited liability company (the "Debtor"), filed a voluntary petition under Chapter 11 of the Bankruptcy Code on April 13, 2009.

2.    The Debtor is operating its business and managing its assets as a debtor-in-possession in accordance with 11 U.S.C. §§ 1107 and 1108.

3.    The Debtor was formed on October 10, 2004.  On April 12, 2006, John Beebe and Julie Beebe purchased all of the membership interests in the Debtor from Robert M. Duffin.  Since that time it has provided its customers with unparalleled customer service.  The Debtor is in the business of operating a pest control business.  Due to the sluggish economy, many of the Debtor's customers, including but not limited to city, state and federal government agencies, have cancelled their contracts.  Many of the Debtor's residential and commercial customers have also scaled back on the services provided by the Debtor.  As a result of these factors, the Debtor has lost approximately 20-25 percent of its gross income.

4.    The Beebes have filed their own Chapter 11 proceedings and both cases are intended to be jointly administered.

5.    The Debtor's projected post-petition income and expenses are identified in the attached budget (the "Budget"). A true and correct copy of the Budget is attached hereto as Exhibit "A."

6.    JP Morgan Chase Bank, N.A. and National Bank of Arizona, N.A. (jointly, the "Secured Creditors")[1] may claim liens on the Debtor's assets and receivables in the approximate amounts of $44,756.90 and $158,608.79, respectively. The Debtor believes the Secured Creditors may claim the revenue generated by the operation of the Debtor's business is its "cash collateral" as defined in 11 U.S.C. §363.

7.    The Debtor proposes to use revenue from the business to pay operating expenses in accordance with the Budget. Actual expenses may vary from the projections contained in the Budget.

8.    It is crucial for the Debtor to have the use of the cash collateral to replenish inventory, pay employees, and pay other ordinary and necessary operating expenses in order to avoid (a) disruption of its work force, (b) maintain customer relations and loyalty, (c) maintain its market presence, and (d) preserve the going concern value of the Debtor and its estate while the Debtor formulates and implements a plan of reorganization.

9.    As and for adequate protection for the limited use of cash collateral as set forth in the Budget, the Debtor offers a post-petition replacement lien to the Secured Creditors on their inventory, accounts, and contract rights in accordance with 11 U.S.C. §§361(2) and 552(b): (a) to the extent of cash collateral actually expended; (b) on the same assets and in the same order of priority as currently exists between the Debtor and the Secured Creditors; and (c) with the Debtor's full reservation of rights with respect to the issues set forth above.

---

[1] The Debtor has yet to determine the validity, priority, enforceability and/or extent of the claimed lien and, therefore, the Debtor takes no position regarding the same but all claimed liens are valid for the sole purposes of this Motion. Secured Creditors have the burden of proof to establish validity of their purported "interests" in cash collateral under §363(p)(2).

10.     If it is denied use of the cash collateral as proposed herein, the Debtor's reorganization efforts will fail and it will no longer survive as a going concern.

## III.     POINTS AND AUTHORITIES

Section 363 of the Bankruptcy Code permits the use of cash collateral upon an interested party's consent or a finding of adequate protection after notice and a hearing. 11 U.S.C. §§363(c) and (e). Since §361 fails to give a definition of "adequate protection"; it only gives an inexhaustive list of examples. Nonetheless, bankruptcy courts have offered substantial guidance regarding the meaning of the same.

### A.     Debtor's Proposed Use of Cash Collateral For Maintenance and Repairs Will Adequately Protect the Secured Creditors.

A large number of bankruptcy courts have found adequate protection where cash collateral is used to maintain and preserve subject to an objecting creditor's lien. See Principal Mutual Life Insurance Co. v. Atrium Development Co. (In re Atrium) 159 B.R. 464, 471 (Bankr. E.D. Va. 1993)("Adequate Protection is typically established by the fact that the cash is being used to maintain and enhance the value of the underlying income producing real property in which the creditor also usually holds a security interest")[2]; see also In re 499 W Warren Street Associates, Ltd. Partnership, 142 B.R. 53, 56 (Bankr. N.D.N.Y 1992)(citing Hartigan v. Pine Lake Village Apartment Co. (In re Pine Lake Village Apartment Co.) 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982); see also In re Princeton Square Assocs., 201 B.R. 90-96 (Bankr. S.D.N.Y. 1996) ("[T]his court concludes that no monetary protection is required to be provided by the debtor in possession to the secured creditor to the extent that the rents are applied for the maintenance of the property in the manner a receiver would apply the rents."). Another bankruptcy court noted:

> "the application of rent income solely to maintain and repair the property as to prevent further deterioration will enhance the value of the property which serves

---

[2] Atrium also noted additional factors such as the existence of equity in the property, the stability of the asset value, and whether the debtor is current on post-petition payments. Atrium 159 B.R. at 471.

as the collateral for plaintiff-mortgagee's interest. The protection and maintenance of plaintiff-mortgagee's collateral, without diversion of funds to the debtor, clearly ensures that the plaintiff-mortgagee's investment is adequately protected." In re Pine Lake Village Apartment Co. 16 B.R. at 756

In re McCombs, 88 B.R. 261 (C.D. Cal. 1988) similarly concluded:

"Use of the cash collateral for needed repairs and renovations should actually result in increased rentals. Debtor has committed to use the cash collateral to pay operating expenses and improve and maintain the Property with any excess income going to First Texas. By dedicating cash collateral for these purposes, debtor has substantially eliminated the risk of diminution of First Texas' interest in cash collateral."

Here, the Secured Creditors are without a doubt adequately protected from the Debtor's proposed use of the Cash Collateral. First, the Debtor will use some of the cash to service the mortgage(s). Next, the Debtor will use the monies to pay property taxes and stay current with property insurance. All of the cash collateral will be used to fund essential operating costs. This will enhance the value of the collateral and should raise the stream of rent revenues while the obligations to secured creditors are serviced. Case law will support this Court's finding of adequately protection by the Debtor's proposed use of cash collateral to maintain the Properties.

**B.    Secured Creditors Are Adequately Protected by Stable Asset Values**

"Adequate protection is provided to safeguard the creditor against depreciation in the value of its collateral during the reorganization process." First Federal Bank of California v. Weinstein (In re Weinstein) 227 B.R. 284, 296 (9th Cir. BAP 1998)(citing Paccom Leasing Corp. v. Deico Elecs., Inc. (In re Deico Elecs., Inc.), 139 B.R. 945, 947 (9th Cir. BAP 1992)). Accordingly, adequate protection should be found where the values of assets securing the collateral are stable. See In re Mullen, 172 B.R. 473, 477 (Bankr. D. Mass. 1994) ("Most courts hold no adequate protection payments was necessary when the property's value remains constant.") (citing In re IPC Atlanta Limited Parntership, 142 B.R. 547 (Bankr. N.D. Ga. 1992)); see also Chase Manhattan Bank USA, N.A. (In re Stembridge) 394 F.3d 383, 387 (5th Cir. 2004)(adequate protection measured by decline in value of collateral); see also In re Beker Industries Corp., 58 B.R. 725, 736 (Bankr.

S.D.N.Y.1986)(adequate protection "focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process.").

Furthermore, the value of the collateral should be measured by the stream of rent income/inventory sales and, therefore, steady rent/revenues constitute adequate protection adequate protection of the collateral producing the same. See Mullen, 172 B.R. at 478. Mullen concluded:

> "The value of the Debtor's properties is therefore based upon their rental incomes. As a result, so too is the value of [creditor's] mortgage interest...*The value of the mortgage interest is not declining because rents are not declining.* Consumption of those rents has no adverse effect upon the mortgage value. Indeed, it has a positive affect. If the rents were not used to pay for management, taxes and maintenance of the properties, the value of [creditor's] mortgage interest would rapidly decline." Id. (emphasis added).

Here, Secured Creditors are adequately protected by the stability of the value of the collateral securing their liens. First, revenues are consistent and have showed no signs of diminishing now that the market has adjusted. Second, and pursuant to the attached Budget, the Debtor proposes to allocate a substantial portion of the cash collateral to fund management payroll, taxes, maintenance expenses and other essential operating costs so that cash will be used to preserve quality of the business assets. Accordingly, the Debtor's proposed reinvestment of the proceeds back into the collateral will not cause the value of the Secured Creditors' interest to diminish; to the contrary, the Debtor's proposed cash collateral use will stabilize, if not enhance, the value of the collateral securing Secured Creditors' interest.

C. **Adequate Protection Does Cannot Include Secured Creditors' Lost Interest or Opportunity Costs.**

Under no circumstance does adequate protection include the lost interest or lost opportunity costs incurred from a secured creditor's delay in the realization of collateral. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd. 484 U.S. 365, 108 S.Ct. 626 (1988)("interest" entitled to adequate protection does not include the right to immediately foreclose on the collateral and, therefore, creditor has no right to interest from delay in realizing the collateral.); see also In re

Weinstein 227 B.R. 284, 296 (9th Cir. BAP 1998)("adequate protection payments cannot be used to compensate the creditor for lost interest or to provide lost opportunity costs"); see also In re Cantrup 32 B.R. 1004, 1005 (Bankr. D.Colo 1983)(Congress did not intend to include payments to undersecured creditors for the loss of the use of their money resulting from the automatic stay under § 362."); see also Production Credit Assoc'n v. Pullins (In re Pullins) 65 B.R. 560, 563 (Bankr. S.D.OH 1986)(Undersecured creditor was not entitled to be compensated, in form of "adequate protection" payments, for money it could earn by foreclosing on its collateral and reinvesting proceeds). To reiterate, another Ninth Circuit bankruptcy court noted:

> "there is no entitlement to cash payments, replacement liens, or other methods of adequate protection to compensate the creditor for lack of access to the collateral for the period of time foreclosure is forestalled due to the automatic stay or for loss of the use of the money it would have been able to receive on liquidation of its collateral, often called "opportunity costs." In re Sun Valley Ranches, Inc. 38 B.R. 595, 597 (Bankr.Idaho1984)

Here, the Debtor does not propose a liquidating Plan; rather, Debtor will retain most of the Secured Properties. Per Timbers, "adequate protection" under §361 does not entitle Secured Creditors reimbursement for lost interest income or the opportunity costs from being able to liquidate the collateral and reinvest the foreclosure proceeds in alternative loans. The Debtor believes these measures are also unnecessary since the risk of future default is slight.

## III.   Conclusion

The Debtor requests this Court grant its Emergency Motion to Use Cash Collateral. The Secured Creditors are adequately protected under §361 in several ways. First, the values of the collateral securing Secured Creditors' interests are stable. The Debtor will use its income to reinvest in its business. This alone would support this Court's finding of adequate protection per Warren Street, Pine Lake or McCombs.

This Court should grant the Motion.

WHEREFORE, the Debtor respectfully requests:

7

1.  Entry of an order authorizing use of cash collateral in accordance with the Budget, subject to a continuance upon request of the Debtor at or before the hearing on this matter.

2.  Granting such other relief as the Court deems just and proper.

DATED this 13th day of April, 2009.

AIKEN SCHENK HAWKINS & RICCIARDI P.C.

By _____
D. Lamar Hawkins
4742 North 24th Street
Suite 100
Phoenix, Arizona 85016-4859
Attorneys for Debtor

COPY of the foregoing mailed, or served
via electronic notification* or fax** or if so marked,
this 13th day of _____April_____, 2009 to:

U.S. TRUSTEE'S OFFICE
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706

JP Morgan Chase Bank, NA
PO Box 4660
Houston, TX 77210

National Bank of Arizona, N.A.
1119 West Southern Avenue
Mesa, AZ 85210

S:\AtomicPestControl\2800401\Pleadings\MotCashColl.doc

8

# ATOMIC PEST CONTROL, LLC
## PROJECTED TOTALS
### April through September 2009

| | Apr - Sep 09 | APRIL | MAY | JUNE | JULY | AUG | SEPT | TOTAL |
|---|---|---|---|---|---|---|---|---|
| **Ordinary Expense** | | | | | | | | |
| **Expense** | | | | | | | | |
| 1090 PAYROLL CLEARING | 23,242.62 | | | | | | | |
| 1099 | 1,500.00 | | | | | | | |
| 8010 OFFICER PAYROLL | 45,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 5,000.00 | 15,000.00 | 10,000.00 | 45,000.00 |
| 8020 SALARIES & WAGES | 367,972.49 | 56,586.01 | 59,770.72 | 59,351.70 | 60,110.07 | 79,777.66 | 52,376.33 | 367,972.49 |
| 8110 ADVERTISING | | | | | | | | |
|   YELLOW PAGE ADS | 1,777.05 | | | | | | | |
|   8110 ADVERTISING - Oth | 30,043.76 | | | | | | | |
| Total 8110 ADVERTISING | 31,820.81 | 5,001.91 | 9,233.61 | 4,323.41 | 4,990.58 | 764.31 | 7,506.99 | 31,820.81 |
| 8150 Automobile | 16,814.54 | 1,406.82 | 4,543.88 | 1,413.13 | 3,776.50 | 2,686.95 | 2,987.26 | 16,814.54 |
| 8160 AUTOMOTIVE - FUEL | 49,883.65 | 6,898.20 | 8,222.98 | 7,740.63 | 10,955.48 | 8,177.51 | 7,888.85 | 49,883.65 |
| 8270 Bank Charges | 736.96 | | | | | | | |
| 8280 CREDIT CARD FEES | 4,939.50 | | | | | | | |
| 8320 DAMAGES | 150.00 | | | | | | | |
| 8360 DONATIONS/Contributic | 25.00 | | | | | | | |
| 8370 Dues and Subscriptions | 1,941.00 | | | | | | | |
| 8390 Entertainment & MEALS | 1,056.37 | | | | | | | |
| 8400 EMPLOYEE INCENTIVE! | 843.41 | | | | | | | |
| 8401 CUSTOMER INCENTIVE | 1,342.36 | | | | | | | |
| 8470 LAUNDRY & CLEANING | 2,157.46 | | | | | | | |
| 8480 LEASE LOT | 4,800.96 | | | | | | | |
| 8490 LEASE HONDA OFSUPE | 4,082.58 | | | | | | | |
| 8500 LEGAL & PROFESSION. | 39.99 | | | | | | | |
| 8510 Licenses and Permits | 601.50 | | | | | | | |
| 8520 SCOTT ETHINGTON | 1,750.00 | | | | | | | |
| 8550 Office | 7,739.03 | | | | | | | |
| 8570 OUTSIDE SERVICES | 85.50 | | | | | | | |
| 8600 Postage | 2,232.65 | | | | | | | |
| 8630 RENTAL - OTHER | 43.05 | | | | | | | |
| 8650 REPAIRS & MAINTENAN | 1,100.00 | | | | | | | |
| 8660 SMALL TOOLS | 3,096.74 | | | | | | | |
| 8670 SUPPLIES | 2,892.65 | | | | | | | |
| 8700 TAXES - SALES | 798.49 | | | | | | | |

# ATOMIC PEST CONTROL, LLC
## PROJECTED TOTALS
### April through September 2009

| | Apr - Sep 09 | | | | | | |
|---|---|---|---|---|---|---|---|
| COMPLIANCE DEPOT | 85.00 | | | | | | |
| MARKETING | 16,954.77 | | | | | | |
| Professional Fees - Othe | 4,851.36 | | | | | | |
| Total Professional Fees | 24,638.13 | 1,700.00 | 2,954.00 | 1,623.92 | 6,921.95 | 3,874.91 | 7,563.35 | 24,638.13 |
| Reconciliation Discrepancies | -300.35 | | | | | | |
| REFERRAL | 337.50 | | | | | | |
| Repairs | | | | | | | |
| Equipment Repairs | 284.94 | | | | | | |
| Total Repairs | 284.94 | | | | | | |
| TARF (S) | 2,376.00 | | | | | | |
| TOSHIBA | 195.00 | | | | | | |
| Total Expense | 755,411.01 | | | | | | |
| OTHER | | 11,628.52 | 12,518.01 | 10,162.58 | 45,553.30 | 9,131.58 | 14,250.41 | 103,244.40 |
| MONTHLY TOTALS | | 106,629.46 | 118,712.52 | 103,490.80 | 168,579.02 | 137,325.77 | 120,673.44 | 755,411.01 |
| PROJECTED EARNINGS | | 150,753.45 | 133,933.65 | 146,128.60 | 120,313.50 | 108,757.50 | 115,302.50 | 775,189.20 |
| DIFFERENCE | | 44,123.99 | 15,221.13 | 42,637.80 | (48,265.52) | (28,568.27) | (5,370.94) | 19,778.19 |

# ATOMIC PEST CONTROL, LLC
## PROJECTED TOTALS
### April through September 2009

| | Apr - Sep 09 | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 8710 TAXES - PAYROLL | 32,855.56 | 4,975.93 | 5,162.26 | 5,051.77 | 5,136.06 | 7,614.65 | 4,914.89 | 32,855.56 |
| 8750 Telephone | | | | | | | | |
|   CELL PHONE | 8,324.98 | | | | | | | |
|   8750 Telephone - Other | 5,083.60 | | | | | | | |
|   Total 8750 Telephone | 13,408.58 | 1,774.41 | 1,662.13 | 926.00 | 5,267.82 | 1,716.85 | 2,061.37 | 13,408.58 |
| 8770 TEMPORARY HELP | 560.00 | | | | | | | |
| 8780 TRAINING & EDUCATION | 1,551.76 | | | | | | | |
| 8800 Travel | 1,684.04 | | | | | | | |
| 8820 UNIFORMS | 1,393.23 | | | | | | | |
| 8850 Utilities | | | | | | | | |
|   Gas and Electric | 1,710.00 | | | | | | | |
|   Water | 804.68 | | | | | | | |
|   8850 Utilities - Other | 2,385.93 | | | | | | | |
|   Total 8850 Utilities | 4,900.61 | | | | | | | |
| AUTO TICKET | 425.00 | | | | | | | |
| CHEMICALS & SUPPLIES | 46,845.84 | 7,366.33 | 6,118.51 | 7,287.99 | 8,426.75 | 7,144.84 | 10,501.42 | 46,845.84 |
| Insurance | | | | | | | | |
|   8430 AUTO INSURANCE | 4,440.40 | | | | | | | |
|   8460 INSURANCE - WOR | 11,487.99 | | | | | | | |
|   Disability Insurance | 609.67 | | | | | | | |
|   Liability Insurance | 5,456.43 | | | | | | | |
|   LIFE INSURANCE | 932.52 | | | | | | | |
|   Total Insurance | 22,927.01 | 4,291.33 | 3,526.42 | 609.67 | 12,440.51 | 1,436.51 | 622.57 | 22,927.01 |
| Interest Expense | | | | | | | | |
|   Finance Charge | 8,591.85 | | | | | | | |
|   Interest Expense - Other | 625.70 | | | | | | | |
|   Total Interest Expense | 9,217.55 | | | | | | | |
| INTERNET EXPENSE | 1,548.71 | | | | | | | |
| JOHN | 11,862.59 | | | | | | | |
| Miscellaneous | 10.00 | | | | | | | |
| Professional Fees | | | | | | | | |
|   Accounting | 2,747.00 | | | | | | | |