1  **AIKEN SCHENK HAWKINS & RICCIARDI P.C.**
   **4742 North 24th Street**
2  **Suite 100**
   **Phoenix, Arizona 85016-4859**
3  **Telephone: (602) 248-8203**
   **Facsimile: (602) 248-8840**
4  **D. Lamar Hawkins – 013251**
   **Philip R. Rupprecht - 009288**
5  **Christopher R. Chicoine – 025260**
   **E-Mail: dlh@ashrlaw.com**
6  **E-Mail: prr@ashrlaw.com**
   **E-Mail: crc@ashrlaw.com**
7  **Attorneys for Debtors**

8               **IN THE UNITED STATES BANKRUPTCY COURT**

9                    **FOR THE DISTRICT OF ARIZONA**

10 | In re: | Chapter 11 Proceedings |
11 | | |
   | ATOMIC PEST CONTROL LLC, an Arizona | Case No. 2:09-bk-07232-RJH |
12 | limited liability company, | Case No. 2:09-bk-07236-RJH |
13 |             Debtor. | (Jointly Administered) |
14 | Address:    1755 S. Recker Rd. | |
   |             Mesa, AZ 85206 | |
15 | Tax ID:     90-0279948 | |
16 | In re: | |
17 | JOHN NELSON BEEBE and JULIE ANN | |
   | BEEBE, | |
18 |             Debtors. | **DEBTORS' FIRST JOINT DISCLOSURE** |
   | | **STATEMENT** |
19 | Address:    1755 S. Recker Rd. | |
20 |             Mesa, AZ 85206 | |
21 | Social Security No(s):    xxx-xx-3193 | |
   |                          xxx-xx-2186 | |

22 ## I.    INTRODUCTION

23        This document is the disclosure statement of the debtors, Atomic Pest Control, LLC

24 ("Atomic") and John Nelson Beebe and Julie Ann Beebe (the "Beebes") (jointly, the "Debtors"), in

25 the above-entitled Chapter 11 bankruptcy proceeding. This Disclosure Statement is submitted by the

26 Debtors pursuant to 11 U.S.C. §1125.

27        11 U.S.C. §1125(b) prohibits the solicitation of acceptances or rejections of a plan of

28 reorganization unless such plan is accompanied by a copy of the Disclosure Statement which has

been approved by the Bankruptcy Court.

The purpose of this Disclosure Statement is to provide creditors and interested parties in this bankruptcy proceeding with such information as may reasonably be deemed sufficient to allow creditors and interested parties to make an informed decision regarding the Debtors' Joint Plan of Reorganization ("Plan"), a copy of which is attached hereto and incorporated herein as Exhibit "A".

Unless otherwise noted, those portions of the Plan and this Disclosure Statement providing factual information concerning the Debtors, their assets and liabilities, have been prepared from information submitted by the Debtors and their retained professionals. The Debtors, and other professionals employed by the Debtors, have utilized all relevant, non-privileged information provided by the Debtors in preparing this Disclosure Statement and the Plan.

This Disclosure Statement contains information that may influence your decision to accept or reject the Debtors' proposed Plan. Please read this document with care.

The financial information contained in this Disclosure Statement has not been subjected to an audit by an independent certified public accountant. For that reason, the Debtors are not able to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracy. To the extent practicable, the information has been prepared from the Debtors' financial books and records and great effort has been made to ensure that all such information is fairly representative.

This Disclosure Statement and the Plan will classify all creditors into Classes. The treatment of each Class of creditors will be set forth in this Disclosure Statement and in the Plan. You should carefully examine the treatment of the Class to which your Claim will be assigned.

This Disclosure Statement requires approval by the Bankruptcy Court after notice and a hearing pursuant to 11 U.S.C. §1125(b). Once approved, the Disclosure Statement will be distributed with the Debtors' proposed Plan for voting. Approval of the Disclosure Statement by the Bankruptcy Court does not constitute either certification or approval of the Debtors' Plan by the Bankruptcy Court or that the Disclosure Statement is without any inaccuracy.

The Bankruptcy Court will confirm the Plan if the requirements of Section 1129 of the Bankruptcy Code are satisfied. The Bankruptcy Court must determine whether the Plan has been

accepted by each impaired class entitled to vote on the Plan. Impaired classes entitled to vote on the Plan are those classes of claims whose legal, equitable or contractual rights are altered, as defined under Section 1124 of the Bankruptcy Code. An impaired class of claims is deemed to have accepted the Plan if at least two-thirds in amount of those claims who vote and more than one-half in number of those claims who vote have accepted the Plan. An impaired class of interests is deemed to have accepted the Plan if the Plan has been accepted by at least two-thirds in amount of the allowed interests who vote on the Plan.

Even if each class of creditors does not accept the Plan, the Plan can be confirmed under §1129(b) of the Code, so long as one impaired class of creditors accepts the Plan. This is referred to as the "cram down" provision. The failure of each class to accept the Plan could very well result in a conversion of this case to a Chapter 7 or dismissal of the Chapter 11, and the secured creditors repossessing its collateral and disposing of it in a commercially reasonable manner with no obligation to unsecured creditors.

Only the votes of those creditors or interested parties whose ballots are timely received will be counted in determining whether a class has accepted the Plan.

## II.   DEFINITIONS

The definitions set forth in Article I of the Plan apply in this Disclosure Statement except to the extent other definitions are set forth in this Disclosure Statement.

## III.   THE DEBTORS AND EVENTS PRECIPITATING THE CHAPTER 11

The Beebes are a married couple residing in Mesa, Maricopa County, Arizona. The Beebes have two sons, ages ten and two. Both of the Beebes are employed through Atomic.

The Beebes are the 100% owners of Atomic. Atomic is an Arizona limited liability company that was formed in October 10, 2004 to provide pest control services. On April 12, 2006, John Beebe and Julie Beebe purchased all of the membership interests in Atomic from Robert M. Duffin. Since that time it has provided its customers with unparalleled customer service. During the early course of its business, Atomic was a profitable company. Due to the sluggish economy, some of the Debtor's customers, including but not limited to city, state and federal government agencies, have cancelled their contracts because they have had to scale back on standard maintenance of their

3

facilities. Many of the Debtor's residential and commercial customers have also scaled back on the services provided by the Debtor. As a result of these factors, the Debtor has lost approximately 20-25 percent of its gross income since the downturn in the economy. The Beebes guaranteed much of the debt of Atomic. Thus, as Atomic has payment problems, so do the Beebes.

Because of this downturn in the economy and business, the Beebes had no choice but to file for Chapter 11 protection for themselves and Atomic on April 13, 2009 in an attempt to protect them and create a repayment schedule that they could afford.

## IV.    SIGNIFICANT EVENTS DURING THE CHAPTER 11

### A.    Administrative Proceedings

On April 13, 2009, Atomic filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code commencing Case No. 2:09-bk-07232-RJH. On April 13, 2009, the Beebes filed a voluntary petition for relief under Chapter 11 of the United States Code commencing Case No. 2:09-bk-07236-RTB. An Order authorizing joint administration of both cases under the Atomic case was signed by this Court on April 13, 2009. The first meetings of creditors in both cases were held on May 19, 2009 at 10:30 a.m. and 11:00 a.m.

### B.    Retention of Professionals

Atomic retained Aiken Schenk Hawkins & Ricciardi P.C. ("ASHR") to act as its bankruptcy counsel. An Order approving ASHR was signed by the Court on April 14, 2009. The Beebes retained ASHR to act as their bankruptcy counsel. An Order approving ASHR was signed by the Court on April 15, 2009.

On June 18, 2009, the Debtors filed a motion to approve Law & Reed, CPA's P.C. ("Law & Reed") as accountant for the Debtors. Law & Reed will assistance the Debtors in general accounting matters, as needed, financial consulting services and the preparation of tax returns. On June 18, 2009, the Court signed an Order approving the retention of the accountant.

### C.    Motion to Approve Use of Cash Collateral

On April 13, 2009, Atomic filed an Emergency Motion for Authorization to Use Cash Collateral. Pursuant to the Motion, Atomic requested an order authorizing Atomic's use of cash collateral in accordance with a Budget attached to the Motion. A hearing was held on April 16,

2009. The U.S. Trustee's office requested Atomic revise its budget to include quarterly payments to the U.S. Trustee. The Court granted the Motion on April 21, 2009.

### D. Motion For Joint Administration

On April 13, 2009, Atomic filed a motion to have its Chapter 11 case jointly administered with the Beebes' Chapter 11 case. On April 13, 2009, an Order was signed by the Court granting the motion. The cases are now jointly administered under Atomic's Case No. 2:09-bk-07232-RJH.

### E. Motion to Set Last Day to File Proofs of Claim

On April 14, 2009, the Debtors filed a Motion to set May 29, 2009 as the bar date for creditors to file claims. On April 14, 2009, the Court signed an Order setting May 29, 2009 as the claim bar date.

### F. Motion to Compel Abandonment

On May 27, 2009, Melissa and Anthony Petkoff (the "Petkoffs") filed an Application for Order to Compel Abandonment from the Debtors' bankruptcy estate all of the Beebes' interest in Tonto Rim Pest Control, PLLC. On June 16, 2009, the Debtors filed an objection to the Petkoffs application. On June 17, 2009 the Petkoffs filed a Certificate of No Objection Regarding its Application for Order to Compel Abandonment. On June 19, 2009, the Debtors filed an Objection to the Certificate of No Objection Regarding its Application for Order to Compel Abandonment. On July 8, 2009, the Petkoffs filed a Notice of Lodging Stipulated Order Vacating Hearing on Application for Order to Compel Abandonment. On July 8, 2009, the Court signed the Stipulated Order Vacating Hearing on Application for Order to Compel Abandonment.

### G. Appointment of Unsecured Creditors Committee

The United States Trustee's Office filed a notice indicating the appointment of an Official Unsecured Creditors' Committee. To date, the unsecured creditors committee has not been active. Given the likely nominal distribution to unsecured creditors, if the unsecured creditors committee were to become active and seek to employ counsel, the Debtors would need to object because they could not afford the administrative burden of additional administrative claims.

H.    <u>National Bank of Arizona's Motion For Relief from Stay</u>

On July 8, 2009, National Bank of Arizona ("National Bank") filed a Motion for Relief from Stay regarding approximately regarding a 2001 Chevrolet Truck and a 2002 Toyota XTR Truck.

The Debtors objected to the Motion but subsequently executed a stipulation for stay relief that will lift the stay if approved by the bankruptcy court. The Debtor anticipates the Court will approve the Stipulation and the vehicles will go back to National Bank.

## V.    DESCRIPTION OF ASSETS AND LIABILITIES OF THE BEEBES

The Beebes have not obtained recent appraisals of any of their assets. The values ascribed to the assets below are based on the Beebes' best estimate and other factors such as the purchase price, comparable sales and tax assessments.

A.    <u>Real Property</u>

The Beebes own a single family residence located at 1755 South Recker Road, Mesa, Arizona (the "Residence"). The Beebes believe the current value of the Residence is $315,000.00 based on the current market and comparative sales. Downey Savings & Loan Association, F.A. ("Downey") holds a first position Deed of Trust on the Residence. The Beebes are obligated to JP Morgan Chase Bank N.A. ("Chase") for a home equity loan; National Bank of Arizona ("NBA") as security for a small business loan for the benefit of Atomic and Robert and Julie Duffin (the "Duffins") as security for the purchase of the membership interest in Atomic. Downey filed a secured proof of claim in the amount of $365,333.16. Chase filed a secured proof of claim in the amount of $94,883.54. NBA filed a secured proof of claim in the amount of $163,143.24. The Duffins filed a secured proof of claim in the amount of $450,000.00. The Beebes claim a $150,000 homestead exemption on the Residence, but it is unlikely there is any equity for the benefit of the Beebes' homestead exemption. When possible costs of sale are factored in, the Beebes do not believe that any equity exists in the Residence for the benefit of the bankruptcy estate. The Beebes simply want to resolve a treatment of Downey that would allow them to keep their Residence.

B.    <u>Personal Property</u>

1.    <u>Bank Accounts</u>

The Beebes held approximately $0.00 in personal bank accounts at the time of

the filing of their petition for relief herein. There is no equity beyond the Beebes' $300.00 exemption in the personal bank account.

### 2. Miscellaneous Household Goods and Furnishings

The Beebes listed approximately $3,302.00 in miscellaneous household goods, and furnishings in their Schedule B. All of these assets are exempt.

### 3. Books and Pictures

The Beebes listed approximately $35.00 in books and pictures. These assets are exempt.

### 4. Miscellaneous Wearing Apparel

The Beebes listed approximately $1,000.00 in miscellaneous wearing apparel in their Schedule B. These assets are exempt.

### 5. Wedding Rings and Watches

The Beebes listed approximately $2,000.00 for wedding/engagement rings and $200 for watches in their Schedule B. These assets are exempt. The Beebes also listed approximately $500.00 for a diamond ring in their Schedule B.

### 6. Hobby Equipment

The Beebes listed a typewriter, three bicycles, a sewing machine, four bibles one .22 caliber pistol and one shotgun valued at approximately $410.00 in their Schedule B. These assets are exempt. The Beebes also list $50.00 for a set of golf clubs.

### 7. Insurance

The Beebes listed a life insurance policy in their Schedule B with an unknown cash value. This asset is exempt.

### 8. Stock and Interests in Incorporated and Unincorporated Businesses

The Beebes listed a 100% ownership interest in Atomic Pest Control, LLC. The value of Atomic is nominal except as a means of providing income to the Beebes. The Beebes also listed a 100% Interest in Tonto Rim Pest Control, PLLC (all accounts serviced under Atomic Pest Control LLC). The value of Tonto Rim Pest Control, PLLC is nominal except as a means of providing income to the Beebes.

9.   Vehicles

The Beebes listed a 2006 Honda Odyssey Van valued at $17,660.00 in their Schedule B. The Beebes claim a $10,000 exemption on this vehicle. Honda filed a secured proof of claim in the amount of $21,920.11, with regard to this vehicle and reflected a value in the same respective amount. The Beebes intend to retain this vehicle and make ongoing payments. No equity exists for the benefit of the estate.

C.   Exemptions

The Beebes have listed various exemptions for personal property in Schedule C. At this time no objections to exemptions have been filed and the time for filing objections has passed.

D.   Financial Reports

The Beebes' and Atomic's monthly operating reports are current and copies can be obtained from the Court's electronic docket.

E.   Administrative Expenses

The Beebes anticipate their administrative expenses will consist primarily of attorneys' fees for ASHR. ASHR received two checks totaling $18,000.00 from the Beebes for the two cases to be jointly administered. ASHR applied $1,039.00 for the filing fee and $5,492.00 for pre-petition fees that were owed before the filing of the Beebes' proceedings. ASHR estimates its remaining fees will be in the range of $20,000, depending on creditor activity in this case, and believes that to the extent it is not paid in full out of the pre-petition fee deposit, it will be paid out of Atomic's and the Beebes' post-petition earnings. There may be additional administrative expenses for related costs such as experts and appraisal fees.

F.   Priority Claims

The Beebes listed in their Schedule E the Arizona Department of Revenue and the Internal Revenue Service as "Notice Only."

G.   Secured Claims

The Beebes listed Downey as having a first position Deed of Trust on the Residence Chase as having a second position Deed of Trust on the Residence, NBA as having a third position Deed of Trust on the Residence and the Duffins as having a fourth position Deed of Trust on the

Residence. The Beebes believe that the Allowed Secured Claim of Downey will be approximately $313,608.10, the Allowed Secured Claim of Chase will be approximately $0, the Allowed Secured Claim of NBA will be approximately $0 and the Allowed Secured Claim of the Duffins will be approximately $0.

The Beebes listed American Honda Finance ("Honda") as a secured creditor with a claim in the approximate amount of $22,000.00 relating to its lien on a 2006 Honda Odyssey Van. Honda filed a secured proof of claim in the amounts of $21,920.11.

H.   Domestic Support Obligations

The Beebes are not required to pay any child support.

I. Unsecured Claims

The Beebes anticipate the total amount of Allowed Unsecured Claims in this Class will be approximately $503,566.00 owed for business-related debt, lines of credit, personal guarantees, and credit card purchases. These claims will be paid a pro-rata distribution of the Beebes' Excess Cash Flow up to the value of the Beebes' Liquidation Equity after all senior Allowed Claims have been paid.

J. Claims Register

Attached hereto as Exhibit "B" is a chart reflecting the status of claims as the Beebes are presently aware.

## VI. DESCRIPTION OF ASSETS AND LIABILITIES OF ATOMIC PEST CONTROL LLC

Atomic has not obtained recent appraisals of any of its assets. The values ascribed to the assets below are based on Atomic's best estimate and other factors such as the purchase price, comparable sales and tax assessments.

A.   Real Property

Atomic owns no real property.

B.   Personal Property

1.   Bank Accounts

Atomic held approximately $290.00 in its checking accounts at Wells Fargo

Bank at the time of the filing of its petition for relief herein. These funds have been used in the post-petition operations of the business.

2.  Accounts Receivable

Atomic listed general accounts receivable in the amount of approximately $60,000.00. Many of these accounts receivables were uncollectible. The accounts receivable have been collected in the ordinary course of business and used in the business operations.

3.  Vehicles

Atomic listed a 1996 Toyota Tacoma valued at approximately $1,850.00; a 2000 Ford F150 valued at approximately $2,750.00; three 2000 Toyota Tacomas valued at approximately $6,825.00 ($2,275.00 each); a 2001 Chevrolet 2KH valued at approximately $13,255.00; 2001 Chevrolet Silverado valued at approximately $3,525.00; a 2002 Chevrolet HD 2500 Extended Cab valued at approximately $6,200.00; a 2002 Toyota XTR valued at approximately $4,580.00; 2003 Toyota Tacoma valued at approximately $5,255.00; a 2005 Scion XB valued at approximately $6,680.00 and a 2005 Toyota Tacoma valued at approximately $7,360.00 in its Schedule B.

4.  Machinery and Equipment

Atomic listed various office equipment and machinery such as trailers, sprayers, mowers and chemicals in its Schedules. These items are valued at approximately $108,381.00.

C.  Financial Reports

Atomic's monthly operating reports are current and copies can be obtained from the Court's electronic docket.

D.  Administrative Expenses

Atomic anticipates its administrative expenses will consist primarily of attorneys' fees for ASHR. ASHR received checks totaling $28,000.00 from the Beebes and a check in the amount of $2,000.00 from Atomic for the two cases to be jointly administered. ASHR applied $1,039.00 for the filing fee and offset $5,863.00 for pre-petition services. The funds received will be used to pay the fees and costs of both bankruptcy proceedings.

E.    Priority Claims

Atomic listed in its Schedule E the Arizona Department of Revenue and the Internal Revenue Service as "Notice Only."

F.    Secured Claims

Atomic listed JPMorgan Chase Bank N.A. as a secured creditor in the amount of $2,089.83 with regard to a UCC-1 Financing Statement secured against Atomic's inventory, chattel paper, accounts and equipment.

Atomic listed JPMorgan Chase Bank N.A. as a secured creditor in the amount of $44,756.90 with regard to a UCC-1 Financing Statement secured against Atomic's inventory, chattel paper, accounts and equipment. JPMorgan Chase Bank N.A. filed a secured proof of claim in the amount of $44,606.90.

Atomic listed National Bank of Arizona as a secured creditor in the approximate amount of $158,608.79 with regard to a Deed of Trust secured against the Beebes' Residence and a UCC-1 Financing Statement secured against Atomic's vehicles, equipment and office furniture. National Bank of Arizona filed a secured proof of claim in the amount of $163,143.24.

G.    Unsecured Claims

Atomic anticipates the total amount of Allowed Unsecured Claims in this Class will be approximately $126,274.00 owed for business-related debt.

H.    Claims Register

Attached hereto as Exhibit "B" is a chart reflecting the status of claims as Atomic is presently aware.

**VII.  CLASSIFICATION, IMPAIRMENT AND TREATMENT OF CLAIMS AND INTERESTS**

THE FOLLOWING STATEMENTS CONCERNING THE PLAN ARE MERELY A SUMMARY OF THE PLAN AND ARE NOT COMPLETE. THE STATEMENTS ARE QUALIFIED ENTIRELY BY EXPRESS REFERENCE TO THE PLAN. CREDITORS ARE URGED TO CONSULT WITH COUNSEL OR EACH OTHER IN ORDER TO UNDERSTAND THE PLAN FULLY. THE PLAN IS COMPLETE, INASMUCH AS IT PROPOSES A LEGALLY BINDING AGREEMENT BY THE DEBTOR. AN INTELLIGENT JUDGMENT CANNOT BE MADE WITHOUT READING IT IN FULL.

**CLASSIFICATION OF CLAIMS AND INTERESTS.**

A.      **Class 1 – Beebes**

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims related to Beebes).

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8) (Tax Claims related to Beebes).

Class 1-C consists of the Allowed Secured Claim of Maricopa County related to the Residence.

Class 1-D consists of the Allowed Secured Claim of Downey Savings & Loan Association, F.A. related to the Residence.

Class 1-E consists of the Allowed Secured Claim of JP Morgan Chase Bank N.A. related to its lien on the Residence.

Class 1-F consists of the Allowed Secured Claim of National Bank of Arizona N.A. related to its lien on the Residence.

Class 1-G consists of the Allowed Secured Claim of Robert and Julie Duffin related to their lien on the Residence.

Class 1-H consists of the Allowed Secured Claim of American Honda Finance related to its lien on the 2006 Honda Odyssey Van.

Class 1-I consists of the Allowed Secured Claim of Petekoff.

Class 1-J consists of the Allowed Unsecured Claims of Creditors of Beebes.

Class 1-K consists of the Allowed Interests of Beebes.

B.      **Class 2 – Atomic Pest Control LLC**

Class 2-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims related to Atomic).

Class 2-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8) (Tax Claims related to Atomic).

Class 2-C consists of the Allowed Secured Claim of National Bank of Arizona N.A. related to its UCC-1 Financing Statement.

Class 2-D consists of the Allowed Secured Claim of JP Morgan Chase Bank N.A.

Class 2-E consists of the Allowed Unsecured Claims of Creditors of Atomic.

Class 2-F consists of the Allowed Interest of Atomic.

## VIII.  IMPAIRMENT OF CLASSES

Classes 1-A, 1-B, 2-A, and 2-B, are unimpaired under the Plan.  All other classes are impaired, as that term is defined in 11 U.S.C. §1124.

## IX.  TREATMENT OF CLASSES

### A.  Class 1 – Beebes

#### 1.  Class: 1-A – Administrative Claims of Beebes

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims) related to the Beebes.  Unless they agree to an alternative form of treatment, the Allowed Claims of Class 1-A shall be paid in full, in cash, by the earlier of the Effective Date or the date that such are allowed and ordered paid by the Court.  Any Class 1-A Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class.  The Allowed Administrative Claim of counsel for the Debtors that has not been paid as of the Effective Date, shall be paid in monthly payments of principal and interest, with interest at 8%, until paid in full.

#### 2.  Class: 1-B – Tax Claims Related to Beebes

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8)-tax claims of the Beebes.  As provided in 11 U.S.C. §1129(a)(9)(C), unless they agree to an alternative form of treatment, the Allowed Priority Claims of Class 1-B shall be paid in full, in cash, in regular installment payments of a total value, as of the Effective Date of the Plan, equal to the Allowed Priority Claim, over a period ending five (5) years after the Petition Date, and in a manner that is not less favorable than the most favored non-priority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under §1122(b)).  Any Allowed Priority Claims will receive interest at the Tax Claim Rate. Any Class 1-B Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class.

#### 3.  Class: 1-C – Maricopa County

Class 1-C consists of the Allowed Secured Claim of Maricopa County as to the Beebes' Residence. Maricopa County filed a proof of claim with an estimated tax liability of $1,391.90. All real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of six (6) months from the Effective Date. All real property taxes that became due prior to the Effective Date on the Residence shall bear interest at the State law rate from the date the taxes became due. The Reorganized Debtors shall pay any real property taxes on the Residence which accrue and become due after the Effective Date as said amounts become due and payable pursuant to State law. The Reorganized Debtors may prepay any of these Allowed Secured Claims at any time without penalty.

### 4. Class: 1-D – Downey Savings & Loan Association, F.A.

This Class consists of the Allowed Secured Claim held by Downey Savings & Loan Association, F.A. ("Downey") as to its first position secured interest in the Beebes' Residence pursuant to a Deed of Trust. Downey filed a secured proof of claim in the amount of $365,333.16. The Beebes assert that Downey's Claim is in first position on the Residence. Downey shall retain its lien on the Residence. Downey's Allowed Secured Claim shall be allowed at the value of the Residence minus all secured debt that is senior to Downey's lien position. The Beebes believe the current value of the Residence is $315,000.00 based on the current market and comparative sales. Thus Downey's Allowed Secured Claim is $313,608.10 ($315,000.00 minus $1,391.90 owing in real property taxes to Maricopa County). This obligation will be reamortized over 30 years beginning as of the Effective Date at the Allowed Secured Claim and paid in equal monthly payments of principal and interest, with interest at the contract rate of 4%, plus the funds necessary for the escrow account for real property taxes and insurance, with a balloon payment required five years after the Effective Date. Further, the escrow account will remain in place for the payment of real property taxes and insurance and any funds in the escrow account on the Petition Date will be used for that purpose. The Beebes may prepay this obligation without penalty at any time. Downey shall release its lien in the Residence once its Allowed Secured Claim has been paid. The Beebes may sell the Residence at any time without penalty so long as the balance owing on Downey's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Downey's Allowed Claim shall be treated in accordance with Class 1-J.

5. **Class: 1-E – JP Morgan Chase Bank, N.A.**

This Class consists of the Allowed Secured Claim held by JP Morgan Chase Bank, N.A. ("Chase") which is secured by a deed of trust in the Beebes' Residence. The Beebes anticipate that they will reach a stipulation with Chase concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Chase filed a secured proof of claim in the amount of $94,883.54. The Beebes assert that Chase's Claim is in second position on the Residence junior to Downey. The Beebes believe the current value of the Residence is $315,000.00 based on the current market and comparative sales. Chase's Allowed Secured Claim would be allowed at the value of the Beebes' Residence minus all senior secured claims. As a result, Chase's Allowed Secured Claim is $0.00 ($315,000.00 value minus $1391.90 owing in real property taxes to Maricopa County, minus Downey's Allowed Secured Claim of $313,608.10). The balance of Chase's Allowed Claim shall be treated in accordance with Class 1-J.

6. **Class: 1-F – National Bank of Arizona, N.A.**

This Class consists of the Allowed Secured Claim held by National Bank of Arizona ("NBA") which is secured by a deed of trust in the Beebes' Residence. The Beebes anticipate that they will reach a stipulation with NBA concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. NBA filed a secured proof of claim in the amount of $163,143.24. The Beebes assert that NBA's Claim is in third position on the Residence junior to Maricopa County, Downey and Chase. The Beebes believe the current value of the Residence is $315,000.00 based on the current market and comparative sales. NBA's Allowed Secured Claim would be allowed at the value of the Beebes' Residence minus all senior secured claims. As a result, NBA's Allowed Secured Claim is $0.00 ($315,000.00 value minus $1391.90 owing in real property taxes to Maricopa County, minus Downey's Allowed Secured Claim of $313,608.10, minus Chase's Allowed Secured Claim of $0). The balance of NBA's Allowed Claim shall be treated in accordance with Class 1-J.

7. **Class: 1-G – Robert and Julie Duffin**

This Class consists of the Allowed Secured Claim held by Robert and Julie Duffin (jointly, "Duffin") which is secured by a deed of trust on the Beebes' Residence. The Beebes anticipate that they will reach a stipulation with Duffin concerning the treatment of their Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. The Beebes assert that Duffin's Claim is in fourth position on the Residence junior to Maricopa County, Downey and Chase, and that Duffin may have other collateral securing their Claim. Duffin filed a secured proof of claim in the amount of $450,000.00. The Beebes assert Duffin's Allowed Secured Claim is $60,000.00. Duffin shall retain their lien on the same collateral and will be paid their Allowed Secured Claim as follows: Duffin's Allowed Secured Claim will be paid in equal monthly payments of principal and interest at 4% per annum and amortized over 5 years. The Beebes may prepay this obligation without penalty at any time. Duffin shall release any and all liens once their Allowed Secured Claim has been paid. The Beebes may sell any of the collateral securing Duffin's Allowed Secured Claim at any time without penalty so long as the balance owing on Duffin's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Duffin's Allowed Claim shall be treated in accordance with Class 1-J.

8. **Class: 1-H – American Honda Finance**

This Class consists of the Allowed Secured Claim held by American Honda Finance ("Honda") that is secured by a first position interest in a 2006 Honda Odyssey Van. Honda filed a secured proof of claim in the amount of $21,920.11. The Beebes anticipate that they will reach a stipulation with Honda concerning the treatment of its Claim associated with this vehicle. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. The Beebes assert that the value of the vehicle and Honda's Allowed Secured Claim is $17,660.00. Honda will retain its first position lien on the vehicle and will be paid its Allowed Secured Claim as follows: This obligation will be reamortized at the Allowed Secured Claim amount as of the Petition Date. The Beebes will pay the present monthly payment in the amount as is reflected in the terms of the pre-petition loan agreement from and after the Petition

Date. The Allowed Secured Claim will continue to bear interest at standard contract rate of interest from and after the Petition Date. Once the Allowed Secured Claim plus accrued Post-Petition Date interest has been paid, Honda shall release its lien on the vehicle and receive no further payments on its Allowed Claim. This obligation may be pre-paid without penalty. The balance of Honda's Allowed Claim shall be treated in accordance with Class 1-J.

### 9. Class: 1-I – Petkoff

This Class consists of the Allowed Secured Claim held by Toni and Melissa Petkoff (jointly, "Petkoff"). The Beebes anticipates that they will reach a stipulation with Petkoff concerning the treatment of their Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Petkoff filed a secured proof of claim in the amount of $320,491.12. The Petkoff's proof of claim fails to identify any collateral securing the Petkoff's Claim. The Beebes are unaware of any collateral securing Petkoff's Claim and have filed an objection to the secured nature of the Claim. Thus, the Debtors assert that the value of Petkoff's Allowed Secured Claim is $0.00. The balance of Petkoff's Allowed Claim shall be treated in accordance with Class 1-J.

### 10. Class: 1-J – General Unsecured Claims of the Beebes

Class 1-J consists of the Allowed Unsecured Claims of Creditors of the Beebes. Class 1-J Creditors shall be paid a pro-rata share from the Beebes' Excess Cash Flow, on a quarterly basis, in an amount sufficient to fund the value of the Beebes' Liquidation Equity (as calculated in the Debtors' Disclosure Statement). In light of the anticipated amount owed to Allowed Administrative Claims and Allowed Priority Claims, the Beebes anticipate that there would not be any required distribution to general unsecured Claims. Nonetheless, the Beebes will distribute to the Allowed Unsecured Claims a pro-rata share of the Beebes' Liquidation Equity as calculated in the Debtors' Disclosure Statement. Any Allowed Unsecured Claims that are determined to be non-dischargeable will continue to receive a pro-rata distribution of the Excess Cash Flow after all senior Allowed Claims have been paid, until satisfied in full.

### 11. Class: 1-K – Allowed Interests of the Beebes

Pursuant to §1129(a)(15) and (b)(2)(B)(ii) of the Bankruptcy Code, the Beebes shall retain their interest in all estate property in consideration of their funding of Allowed Claims and shall receive all exempt property.

**B.    Class 2 – Atomic Pest Control LLC**

     **1.    Class 2-A – Administrative Claims of Atomic Pest Control LLC**

Class 2-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims) related to Atomic. Unless they agree to an alternative form of treatment, the Allowed Claims of Class 2-A shall be paid in full, in cash, by the earlier of the Effective Date or the date that such are allowed and ordered paid by the Court. Any Class 2-A Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class. The Allowed Administrative Claim of counsel for Atomic that has not been paid as of the Effective Date, shall be paid in monthly payments of principal and interest by the Beebes, with interest at 8%, until paid in full.

     **2.    Class 2-B – Tax Claims Related to Atomic Pest Control LLC**

Class 2-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8)-tax claims of Atomic. As provided in 11 U.S.C. §1129(a)(9)(C), in full satisfaction of their Allowed Priority Claims, Class 2-B will receive a pro-rata distribution of the liquidation of any assets of Atomic's bankruptcy estate after all senior claims have been paid in full. Any Allowed Priority Claims will receive interest at the Tax Claim Rate. Any Class 2-B Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class.

     **3.    Class 2-C – Allowed Secured Claim of National Bank of Arizona, N.A.**

This Class consists of the Allowed Secured Claim held by National Bank of Arizona, N.A. ("NBA") which is secured by a UCC-1 Financing Statement in all of Atomic's business assets. NBA filed a secured proof of claim in the amount of $163,143.23. Atomic anticipates that it will reach a stipulation with NBA concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Atomic assert that the value of the business assets and NBA's Allowed

Secured Claim is $163,143.23. NBA will retain its first position lien on the business assets and will be paid its Allowed Secured Claim as follows: Two of the vehicles (a 2002 Nissan Frontier and a 2000 Toyota Tacoma) securing NBA's Allowed Secured Claim have been totaled and are subject to an insurance claim. These insurance proceeds ($6,200.00 for the Frontier and $ 3,026.56 for the Tacoma) will be paid over by the insurance company directly to NBA and applied to the principal balance owing on the Allowed Secured Claim as of the Effective Date. The balance of the Allowed Secured Claim of $154,343.23 will be reamortized as of the Effective Date, amortized over 30 years, with interest at 4%, and paid in monthly payments of principal and interest. Once the Allowed Secured Claim plus accrued Post-Effective Date interest has been paid, NBA shall release its lien on all collateral and receive no further payments on its Allowed Claim. This obligation may be pre-paid without penalty.

4. **Class 2-D – Allowed Secured Claim of JP Morgan Chase Bank N.A.**

This Class consists of the Allowed Secured Claim held by JP Morgan Chase Bank N.A. ("Chase"). Atomic anticipates that it will reach a stipulation with Chase concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Chase filed a secured proof of claim in the amount of $44,606.90, and reflected that its Claim is secured by "other" although Chase failed to identify any collateral securing its Claim. Atomic is unaware of any collateral securing Chase's Claim and will file an objection to the secured nature of the Claim. Thus, Atomic assert that the value of Chase's Allowed Secured Claim is $0.00. The balance of Chase's Allowed Claim shall be treated in accordance with Class 2-E.

5. **Class 2-E – Allowed Unsecured Claims of Creditors of Atomic Pest Control LLC**

Class 2-E consists of the Allowed Unsecured Claims of Creditors of Atomic. Class 2-E Creditors shall be paid a pro-rata share from Atomic's Excess Cash Flow, on a quarterly basis, in an amount sufficient to fund the value of Atomic's Liquidation Equity (as calculated in the Debtors' Disclosure Statement). In light of the anticipated amount owed to Allowed Administrative Claims and Allowed Priority Claims, Atomic anticipates that there would not be any required

distribution to general unsecured Claims. Nonetheless, Atomic will distribute to the Allowed Unsecured Claims a pro-rata share of Atomic's Liquidation Equity as calculated in the Debtors' Disclosure Statement.

###### 6.     Class 2-F – Allowed Interest of Atomic Pest Control LLC

Class 2-F consists of the Allowed Interests of Atomic held by the Beebes. The Beebes bankruptcy estate will receive any remaining liquidation proceeds of the Atomic estate after all senior Allowed Claims have been paid in full. Atomic does not anticipate that there will be any distribution to this Class. The Beebes shall retain their Allowed Interests in Atomic.

## X.     LIQUIDATION ANALYSIS

### A.    Beebes Liquidation Analysis

The following is a Liquidation Analysis indicating what the Beebes believe Creditors would receive in the event of a liquidation. The figures for "market value" and "liquidation value" are the Beebes' best estimate on what these assets are worth on a market or liquidation basis.

As to the Beebes, individually, the analysis is as follows:

| Asset | Scheduled Value | Liquidation Value | Exemption | Secured Claim | Equity |
|---|---|---|---|---|---|
| Residence | 315,000 | 283,500[1] | 150,000 | Exceeds Value | 0 |
| Bank Deposits | 0 | 0 | 300 | 0 | 0 |
| Misc. Household Goods | 3,302 | 2972[2] | 8,000 | 0 | 0 |
| Misc. Books/Pictures | 35 | 31[2] | 500 | 0 | 0 |
| Misc. Wearing Apparel | 1,000 | 900[2] | 2,000 | 0 | 0 |
| Wedding Rings | 2,000 | 1,600[2] | 2,000 | 0 | 0 |
| Diamond Ring | 500 | 450[2] | 0 | 0 | 450 |
| 2 Watches | 200 | 180[2] | 200 | 0 | 0 |
| Typewriter, Bikes, Sewing Machine, Bibles, Guns | 410 | 369[2] | 500 | 0 | 0 |
| Golf Clubs | 50 | 45[2] | 0 | 0 | 45 |
| Term Life Ins. Policy | 0 | 0 | 0 | 0 | 0 |
| Interests in LLCs | 2,000 | 2,000 | 0 | 0 | 2,000 |
| 2006 Honda Odyssey | 17660 | 15,894[2] | 10,000 | Exceeds Value | 0 |
| Food, Fuel and Supplies | 300 | 300 | 300 | 0 | 0 |
|  |  |  |  |  |  |
| Liquidation Equity |  |  |  |  | 2,495 |

---

[1] The Beebes assume approximately 10% of value for sales costs and commissions to sell the real property.

[2] The Beebes assume 10% cost of sale on liquidation.

Creditors should note that on a liquidation basis, full market value for assets cannot be obtained. Further, there are costs associated with a liquidation of assets that must be paid out of any sale proceeds. The liquidation analysis does not contain an estimation of any tax liability which could be associated with the liquidation. This would lessen the recovery to creditors. **Creditors should note that after Administration Claims and Priority Claims, no Liquidation Equity exists for the benefit of general Unsecured Claims. Nevertheless, the Debtors are dedicating to pay to their general unsecured creditors the Liquidation Equity set forth above of $2,495 so that general Unsecured Claims will receive a distribution.** This analysis is provided for informational purposes only, given that the Debtors' Plan does not contemplate a liquidation in this fashion. The importance of the analysis is to illustrate that even if the Beebes' estate was liquidated, values would lessen significantly and creditors would not be paid quickly. The Debtors' Plan not only calls for the commencement of immediate payments to all creditors, it also enhances the ability to pay creditors in a greater amount more quickly. Only the Beebes own assets that are subject to exemptions. Unsecured creditors should be mindful that all administrative claims and priority claims are paid before any distribution to general unsecured claims. Further, creditors should note that the Beebes will be paying in full their administrative and priority claims out of their post-petition earnings.

B.     Atomic's Liquidation Analysis

The following is a Liquidation Analysis indicating what Atomic believes Creditors would receive in the event of a liquidation. The figures for "market value" and "liquidation value" are Atomic's best estimate on what these assets are worth on a market or liquidation basis.

As to Atomic, the analysis is as follows:

| Asset | Scheduled Value | Liquidation Value | Secured Claim | Equity |
|---|---|---|---|---|
| Bank Deposits | 290 | 0 | Exceeds value | 0 |
| Accounts Receivable | 60,000 | 47,110.90[3] | Exceeds value | 0 |
| 2002 Toyota XTR (VIN 5TEVL52N62Z057096) | 4,580 | 4,122[4] | Exceeds value | 0 |

[3] Atomic believes that $12,889.10 of the accounts receivable are uncollectible.

| | | | | |
|---|---|---|---|---|
| 2003 Toyota Tacoma (VIN 5TBRN3341X3S423711) | 5,255 | 4,729[4] | Exceeds value | 0 |
| 2001 Chevrolet Silverado (VIN 1GCEC14W91Z312090) | 3,525 | 3,172[4] | Exceeds value | 0 |
| 2002 Chevrolet HD 2500 Extended Cab (VIN 1GCHC29U92E219167) | 6,200 | 5,580[4] | Exceeds value | 0 |
| 2000 Ford F150 (VIN 1FTRX17LOYKA18264) | 2,750 | 2,475[4] | Exceeds value | 0 |
| 1996 Toyota Tacoma (VIN 4TAVL52N4TZ144455) | 1,850 | 1,665[4] | Exceeds value | 0 |
| 2000 Toyota Tacoma (VIN 4TANL42N3YZ645158) | 2,275 | 2,047[4] | Exceeds value | 0 |
| 2000 Toyota Tacoma (VIN 5TENL42N8YZ692422) | 2,275 | 2,047[4] | Exceeds value | 0 |
| 2000 Toyota Tacoma (VIN 4TANL42N9YZ655693) | 2,275 | 2,047[4] | Exceeds value | 0 |
| 2005 Toyota Tacoma (VIN 5TENZ22N55Z127430) | 7,360 | 6,624[4] | Exceeds value | 0 |
| 2001 Chevrolet 2KH (VIN 1GCHK23131F193949) | 13,255 | 11,929[4] | Exceeds value | 0 |
| 2005 Scion XB (VIN JTLKT324050176205) | 6,680 | 6,012[4] | Exceeds value | 0 |
| Miscellaneous Business Equipment | 60,724 | 54,651[4] | Exceeds value | 0 |
| Office Furniture and Computers | 44,657 | 40,191[4] | Exceeds value | 0 |
| Chemicals and Office Supplies | 3,000 | 2,700[4] | Exceeds value | 0 |
| | | | | |
| Liquidation Equity | | | | 0 |

All of Atomic's assets are secured by the Claim of NBA, and the amount of this Claim is greater than the value of the assets. Creditors should note that on a liquidation basis, full market value for assets cannot be obtained. Further, there are costs associated with a liquidation of assets that must be paid out of any sale proceeds. The liquidation analysis does not contain an estimation of any tax liability which could be associated with the liquidation. This would lessen the recovery to creditors. **Creditors should note that after Administration Claims and Priority Claims, no Liquidation Equity exists for the benefit of general Unsecured Claims. Nonetheless, if assets are recovered in Atomic that would allow for a distribution to satisfy its creditors and have a return to equity, Atomic would distribute this value to its creditors in accordance with the priorities of the Bankruptcy Code. Atomic will pay in full all of its Administrative Claims and Priority Claims out of its Excess Cash Flow. Atomic will also make a distribution to its**

---

[4] Atomic assumes 10% cost of sale on liquidation.

**general Unsecured Claims of $2,000 to be disbursed on a pro-rata basis so that general Unsecured Claims can receive a distribution in this case.**

This analysis is provided for informational purposes only, given that the Debtors' Plan does not contemplate a liquidation in this fashion. The importance of the analysis is to illustrate that even if Atomic's estate was liquidated, values would lessen significantly and creditors would not be paid quickly and general unsecured creditors would not receive a distribution. The Debtors' Plan not only calls for the commencement of immediate payments to all creditors, it also enhances the ability to pay creditors in a greater amount more quickly. Unsecured creditors should be mindful that all administrative claims and priority claims are paid before any distribution to general unsecured claims.

**XI.**     **DISPOSABLE INCOME ANALYSIS FOR THE BEEBES**

Pursuant to §1129(a)(15) of the Bankruptcy Code, the Court shall confirm the Plan only if: in a case in which the debtor is an individual and in which the holder of an Allowed Unsecured Claim objects to the confirmation of the Plan, what the holder of such Allowed Unsecured Claim shall receive under the Plan is either (A) the value, as of the Effective Date of the Plan, of the property to be distributed under the Plan on account of such Allowed Unsecured Claim is not less than the amount of such Allowed Unsecured Claim, or (B) the value of the property to be distributed under the Plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer.

Section 1325(b)(2) defines disposable income as current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable non-bankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount

not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

The Beebes provided a calculation of their current monthly income with their Bankruptcy Schedules. Pursuant to that statement, the Beebes' combined current monthly income is $8,353.71. According to the Beebes' Schedule J, which identifies the Beebes' necessary expenses, the Beebes' expenses are $10,371.00 on a monthly basis. Thus, the Beebes' disposable income is $0, and such monthly amount over five years is $0. **Accordingly, creditors should note that the amount to be disbursed to satisfy § 1129(a)(15) of the Bankruptcy Code to several Unsecured Claims is $0. The Debtors' Plan provides that the Beebes will pay their Administrative Claims and Priority Claims in full. Further, while the Liquidation Analysis shows that there is not a required distribution to the Beebes' general unsecured creditors, the Beebes are nonetheless committing to fund the value of their Liquidation Equity on a pro-rata basis to Allowed Unsecured Claims so that they can receive a distribution from the bankruptcy estate.**

## XII.     EFFECT OF CONFIRMATION FOR ATOMIC

Except as otherwise provided in the Plan or the Court's order confirming the Plan, the Confirmation Order acts as a discharge, effective as of the Effective Date, of any and all debts of the Debtors that arose at any time before the entry of the Confirmation Order, including but not limited to, all principal and any and all interest accrued thereon, pursuant to §1141(d)(l) of the Bankruptcy Code. The discharge of the Debtors shall be effective as to each claim regardless of whether a proof of claim thereof was filed, whether the claim is an allowed claim, or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtors dealt with in the Plan shall be considered New Obligations of the Debtors, and these New Obligations shall not be considered in default unless and until the Reorganized Debtors default on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtors and, once the Plan is

confirmed, the only obligations of the Debtors shall be such New Obligations as provided for under the Plan.

### XIII.    EFFECT OF CONFIRMATION FOR THE BEEBES

Because the Debtors are individuals, pursuant to §1141(d)(5) of the Bankruptcy Code, Confirmation of the Plan does not provide the discharge for the Debtors. The Debtors will move for the entry of a final decree after the Debtors have provided for the implementation of the Plan, and the final decree will contain the language providing the Debtors their discharge and such final decree will discharge any and all debts of the Debtors, that arose any time before the entry of the Confirmation Order, including, but not limited to, all principal and all interest accrued thereon, pursuant to §1141(d) of the Bankruptcy Code. The discharge shall be effective as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtors dealt with in the Plan shall be considered New Obligations of the Debtors, and these New Obligations shall not be considered in default unless and until the Reorganized Debtors default on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtors and, once the Plan is confirmed, the only obligations of the Debtors shall be such New Obligations as provided for under the Plan.

### XIV.    IMPLEMENTATION AND FUNDING OF DEBTORS' PLAN

The Beebes' Plan will be funded by the Beebes' post-petition earnings and Excess Cash Flow. Atomic's Plans will be funded by its operations and Excess Cash Flow. The Reorganized Debtors shall act as the Disbursing Agent under the Plan.

In the event any entity which possesses an Allowed Secured Claim, or any other lien in any of the Debtors' property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtors may record a copy of the Plan and the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien

release and creation of the necessary new liens to satisfy the terms of the Plan. If the Debtors deem advisable, they may obtain a further Order from the Court which may be recorded in order to implement the terms of the Plan.

## XV.     TAX CONSEQUENCES

Pursuant to §1125(a)(1) of the Bankruptcy Code, the Debtors are to provide a discussion of the potential material federal tax consequences of the Plan to the Debtors, any successor to the Debtors, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the Plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether the Disclosure Statement provides adequate information, the Court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

Neither the Debtors nor their lawyers can make any statements with regard to the tax consequences of the Plan on any of the creditors. Although they would note that to the extent the creditor is not paid in full their Allowed Claim, they should consult with their tax advisor concerning the possibility of writing off for tax purposes that portion of their Allowed Claim that is not paid. Each creditor in this case, when analyzing the Plan, should consult with its own professional advisors to determine whether or not acceptance of the Plan by the creditor will result in any adverse tax consequences to the creditor.

The Bankruptcy Tax Act generally provides that the Debtors do not have to recognize income from the discharge of indebtedness. The Plan contemplates significant discharge of indebtedness; however, because the Debtors are in bankruptcy, they will not have to recognize the discharge of indebtedness as income for tax purposes. The Debtors do not believe the Plan will cause any adverse tax consequences.

## XVI.     NON-ALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of, and no allowed claim, whether secured, unsecured, priority, or administrative, shall include any fine, penalty, exemplary or punitive damages, late charges or other monetary charge relating to or arising from any default or breach by

Debtors, and any claim on account thereof shall be deemed disallowed whether or not an objection to it is filed.

## XVII.    **EXECUTORY CONTRACTS**

The Debtors reject all executory contracts and unexpired leases not otherwise assumed herein or by separate order of the Court. Claims for any executory contracts or unexpired leases rejected by the Debtors shall be filed no later than ten (10) days after the earlier of Confirmation or the date the executory contract or unexpired lease is specifically rejected. Any such Claims not timely filed and served shall be disallowed.

## XVIII.   **VOTING PROCEDURE**

The Plan divides the Claims of Creditors and of Interest Holders into separate Classes. All Classes of Claimants are encouraged to vote; however, only the vote of holders of Claims that are impaired by the Plan will have a significant impact upon the confirmation process. Generally, this includes Creditors who, under the Plan, will receive less than payment in full of their Claims on the Effective Date of the Plan.

All Creditors entitled to vote on the Plan must cast their vote by completing, dating and signing the ballot which has been mailed to them together with the Disclosure Statement. The ballot contains instructions concerning the deadline for submitting the ballot and to what address the ballot should be mailed.

This Disclosure Statement has been approved by the Bankruptcy Court in accordance with §1125 of the Bankruptcy Code, and is provided to each person whose Claim or Interest has been scheduled by the Debtors, or who has filed a proof of claim or interest with respect to the Debtors or their property, each known equity interest holder and other parties-in-interest known to the Debtors. The Disclosure Statement is intended to assist Creditors in evaluating the Plan and in determining whether to accept the Plan. In determining acceptance of the Plan, votes of Creditors will only be counted if submitted by a Creditor whose claim is duly scheduled by the Debtors as undisputed, non-contingent and liquidated, or who has timely filed with the Court a proof of claim or proof of interest.

The Bankruptcy Court will schedule a hearing to determine whether the requirements for confirmation under the Bankruptcy Code have been met and whether the Plan has been accepted by each impaired Class and by the requisite number of Creditors in such Class. Under §1126 of the Code, an impaired class is deemed to have accepted the Plan upon a favorable vote of at least two-thirds (2/3) in dollar amount and more than one-half (l/2) in number of the allowed Claims of Class members voting on the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that Class members will receive at least as much as they would if the Debtors were liquidated under Chapter 7 of the Code.

Even if each Class of Creditors does not accept the Plan, the Plan can be confirmed under §1129(b) of the Code, so long as one impaired Class of Creditors accepts the Plan. The failure of each Class to accept the Plan could very well result in a conversion of this case to a Chapter 7 or dismissal of the Chapter 11, and the secured Creditors repossessing their collateral and disposing of it in a commercially reasonable manner with no obligation to unsecured Creditors.

## XIX.    MODIFICATION OF PLAN

In addition to its modification rights under § 1127 of the Bankruptcy Code, the Debtors may amend or modify their Plan at any time prior to Confirmation without leave of the Court. The Debtors or the Reorganized Debtors may propose amendments and/or modifications of their Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtors or the Reorganized Debtors may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of their Plan.

## XX.    CLOSING OF THE CASE

If the Court does not close this case on its own motion, the Reorganized Debtors will move the Court to close this case once the Plan is deemed substantially consummated. Until substantial consummation, the Reorganized Debtors will be responsible for filing pre- and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. §1930, as amended. Pursuant to 11 U.S.C.

§1129(a)(12), all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## XXI.     RETENTION OF JURISDICTION

The Court will retain jurisdiction until the Plan has been fully consummated for, including but not limited to, the following purposes:

1.     The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtors to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtors' rights to object to or to re-examine the Claim in whole or in part.

2.     To determine any Claims which are disputed by the Debtors, whether such objections are filed before or after Confirmation, to estimate any Unliquidated or Contingent Claims pursuant to 11 U.S.C. §502(c)(1) upon request of the Debtors or any holder of a Contingent or Unliquidated Claim, and to make determination on any objection to such Claim.

3.     To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtors and any other party, including but not limited to, any rights of the Debtors to recover assets pursuant to the provisions of the Bankruptcy Code.

4.     The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in the Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.

5.     The modification of the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6.     To enforce and interpret the terms and conditions of the Plan.

7.     The entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions of such title, right and power that this Court may deem necessary.

8.     The entry of an order concluding and terminating this case.

## XXII.     DISCLAIMER

Court approval of this Disclosure Statement and the accompanying Plan of Reorganization, including exhibits, is not a certification of the accuracy of the contents thereof.  Furthermore, Court approval of these documents does not constitute the Court's opinion as to whether the Plan should be approved or disapproved.

## XXIII.  RISKS

The risk of the Plan lies essentially with the Beebes' ability to maintain their income to make Plan payments.

## XXIV.     PROPONENTS RECOMMENDATION/ALTERNATIVES TO THE PLAN

The Debtors recommend that all creditors entitled to vote for the Plan do so.  The alternatives to confirmation of the Plan would be either conversion of this case to a case under Chapter 7 of the Bankruptcy Code or its dismissal.

Conversion will result in the appointment of a Chapter 7 trustee and, most likely, the hiring of an attorney by the trustee.  Expenses incurred in administering the Chapter 7 case will take priority in the right to payment over allowed, administrative expenses incurred in the Chapter 11 case.  Both Chapter 7 and Chapter 11 administrative expenses take priority over the payment of unsecured claims without priority.  In other words, conversion would likely decrease the net amount available to pay currently existing creditors.  Further, a Chapter 7 proceeding would not provide the Debtors with the means to pay his Priority Claims over time.

In addition, conversion could substantially delay any distribution to creditors beyond the time period for distribution defined in the Plan.  A Chapter 7 trustee is not limited to specific deadlines for closing a case and distributing assets to creditors.  It is not unusual for distributions in Chapter 7 cases to be delayed for years.  Moreover, the return on the assets of the Estate a trustee is likely to obtain through a standard Chapter 7 liquidation could be less than the return the Plan will generate.

Dismissal of this case would leave all creditors holding unsecured claims in the position of having to institute legal proceedings to collect their debts.  Moreover, outside the context of a

bankruptcy case, the first creditor to collect may collect all non-exempt property, leaving nothing to be paid to remaining creditors. In addition, dismissal of this case would open the door for the Debtors to file a new bankruptcy case, which could further delay or reduce funds available to pay creditors.

For all these reasons, the Debtors urge you to vote to accept the Plan and to return your ballots in time to be counted.

DATED this 11ᵗʰ day of August, 2009.

AIKEN SCHENK HAWKINS & RICCIARDI P.C.

By_____
D. Lamar Hawkins
4742 North 24ᵗʰ Street
Suite 100
Phoenix, Arizona 85016-4859
Attorneys for Debtor

ATOMIC PEST CONTROL LLC

By: _____
    John N. Beebe
Its: President

_____
John Nelson Beebe

_____
Julie Ann Beebe

COPY of the foregoing mailed, or served
via electronic notification* or fax** or if so marked,
this 11ᵗʰ day of August, 2009, to:

U.S. TRUSTEE'S OFFICE
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706

S:\AtomicPestControl\280040\Pleadings\DiscStmt.doc

31

**AIKEN SCHENK HAWKINS & RICCIARDI P.C.**
4742 North 24th Street
Suite 100
Phoenix, Arizona 85016-4859
Telephone: (602) 248-8203
Facsimile: (602) 248-8840
D. Lamar Hawkins – 013251
Philip R. Rupprecht - 009288
Christopher R. Chicoine – 025260
E-Mail: dlh@ashrlaw.com
E-Mail: prr@ashrlaw.com
E-Mail: crc@ashrlaw.com
Attorneys for Debtors

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| ATOMIC PEST CONTROL LLC, an Arizona limited liability company, | Case No. 2:09-bk-07232-RJH<br>Case No. 2:09-bk-07236-RJH |
| Debtor. | (Jointly Administered) |
| Address: 1755 S. Recker Rd.<br>Mesa, AZ 85206 | |
| Tax ID: 90-0279948 | |
| In re: | |
| JOHN NELSON BEEBE and JULIE ANN BEEBE, | |
| Debtors. | **DEBTORS' FIRST JOINT PLAN OF REORGANIZATION** |
| Address: 1755 S. Recker Rd.<br>Mesa, AZ 85206 | |
| Social Security No(s): xxx-xx-3193<br>xxx-xx-2186 | |

Atomic Pest Control LLC ("Atomic") and John Nelson Beebe and Julie Ann Beebe ("Beebes") (jointly, the "Debtors"), debtors-in-possession in the above-captioned bankruptcy estate, submit to the Court and creditors of the Debtors' estates the following Joint Plan of Reorganization (the "Plan"), pursuant to §1121(a) of the Bankruptcy Code.

## I. DEFINITIONS

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined have the meanings ascribed to them in Section I

**EXHIBIT** A

of the Plan. Any term used in the Plan that is not defined in the Plan but is defined in the Bankruptcy Code or the Bankruptcy Rules retains the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in this Plan, the following terms have the meanings specified below:

Administrative Claim: A Claim for payment of an administrative expense of a kind specified in 11 U.S.C. §§503(b) or 1114(e)(2) and entitled to priority pursuant to Code § 507(a)(1), including, but not limited to, (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the bankruptcy estate and operating the Debtors' business, (b) all Allowed Claims of professionals appointed by the Bankruptcy Court, (c) all fees and charges assessed against the bankruptcy estate under 28 U.S.C. § 1930, and (d) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under Code § 546(c)(2).

ADOR: The Arizona Department of Revenue.

Allowed Claim: Allowed Claim shall mean a Claim:

(a) with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Rule 3003 of the Rules of Bankruptcy Procedure and to which no objection to the allowance of the Claim has been filed by the Debtors or any other party or as to which any such objection has been determined by an order or judgment of the Court which is no longer subject to appeal and to which no appeal is pending, or

(b) Scheduled in the list of creditors prepared and filed with the Court pursuant to Rule 1007(b), Rules of Bankruptcy Procedure, and not listed as disputed, contingent or un-liquidated as to the amount.

An Allowed Claim shall not include un-matured or post-petition interest, penalties, fees or costs, unless specifically stated in the Plan. Notwithstanding §502(a) of the Code and Rules 3001 and 3003, for the purposes of the Plan, a Claim shall not be an Allowed Claim unless it satisfies the definition of Allowed Claim under this Plan.

Allowed Interest: An Allowed Interest shall mean an Interest in the Debtors held by a person or entity, as of the Effective Date, and as to which Interest no objection has been made within the

2

time allowed for the making of objections, or as to which such Interest is allowed by a final order, or an Interest as to which a timely and proper proof of interest has been filed, and as to which proof of interest no objection has been made within the time allowed for making objections.

Allowed Priority Claim: The Allowed Claim of a Claimant that is entitled to priority in payment under 11 U.S.C. §507(a)(2) through (a)(8).

Allowed Secured Claim: An Allowed Claim to the extent that such Allowed Claim is secured by a lien which is unavoidable, on property in which the estate has an interest, to the extent of the value of such Creditor's interest in the estate's interest in such property as determined in light of the purpose of the valuation and of the proposed disposition and use of such property and determined as of the Petition Date.

Allowed Unsecured Claim: An Allowed Claim to the extent that such Allowed Claim is not secured by a lien on property in which the estate has an interest.

Atomic: Atomic Pest Control LLC.

Ballot: Each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote as specified in this Plan in connection with the solicitation of acceptances of this Plan.

Bankruptcy Code: 11 U.S.C. §101 et seq.

Bankruptcy Court: The United States Bankruptcy Court for the District of Arizona or any other court which may have jurisdiction over this case or any proceeding arising under, in, or relating to this case.

Bankruptcy Rule: The Federal Rules of Bankruptcy Procedure as amended and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

Bar Date: The date, if any, designated by the Bankruptcy Court as the last date for filing Proofs of Claim or Interest against the Debtors.

Beebes: John Nelson Beebe and Julie Ann Beebe.

Chapter 11: Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §1101, et seq.

Claim: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, un-liquidated, fixed, contingent, matured, un-matured, disputed, undisputed, legal, equitable, secured

or unsecured, which right arose or accrued prior to the date of Confirmation, or; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, un-matured, disputed, undisputed, secured, or unsecured, where such right arose or accrued prior to Confirmation, or; (c) a claim arising under 11 U.S.C. §502(g).

Claimant or Creditor: Any person or entity that asserts a Claim.

Class: A category of holders of Claims or Interests as described in this Plan.

Confirmation: The signing by the Court of the Confirmation Order.

Confirmation Date: The date upon which the Confirmation Order is entered upon the docket.

Confirmation Hearing: The hearing held by the Bankruptcy Court regarding confirmation of the Plan, as it may be continued from time to time.

Confirmation Order: The Order signed by the Bankruptcy Court pursuant to 11 U.S.C. §1129 confirming this Plan.

Contingent Claim: Any Claim for which a proof of claim has been filed with the Bankruptcy Court: (a) which was not filed in a sum certain, or which has not accrued and is dependent on a future event that has not occurred and may never occur, and (b) which has not been allowed on or before the Confirmation Date.

Court: The United States Bankruptcy Court for the District of Arizona, which has jurisdiction in this case.

Debtors: Atomic Pest Control LLC and John Nelson Beebe and Julie Ann Beebe.

Disbursing Agent: The Reorganized Debtors shall be the Disbursing Agents and shall make distributions to holders of Allowed Claims under the Plan.

Disclosure Statement: The Debtors' disclosure statement and any amendments and supplements thereto as approved by an order of the Bankruptcy Court.

Disputed Claim: A Claim which the Debtors listed as un-liquidated, disputed or contingent in their Schedules or to which an objection has been filed which has not been resolved by a final order of the Bankruptcy Court.

Effective Date: 30 days after the Confirmation Date. If 30 days after the Confirmation Date falls on a weekend or a holiday, the Effective Date will be the first business day thereafter.

**Excess Cash Flow:** Cash flow of the Debtors' post-petition income after deduction from their post-petition income as set forth in their Schedule I, all expenses as set forth in their Schedule J, including all payments to administrative, priority, and secured creditors.

**Final Order:** An order or judgment which has not been stayed.

**Impaired:** When used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Code §1124.

**Insider:** A person or entity within the definition contained at §101(31) of the Bankruptcy Code.

**IRS:** The Internal Revenue Service.

**Interest:** Any equity interest in the Debtors as of the Effective Date.

**Interest Holder:** Any person or persons owning an Interest in the Debtors as of the Effective Date.

**New Obligations:** Those debts of the Debtors which existed pre-confirmation, but which are modified by the confirmed Plan resulting in the creation of a new note. The obligation for which the Reorganized Debtors have liability under the terms of the confirmed Plan. Said new obligations shall not be considered in default unless and until the Reorganized Debtors default on said obligations after the Effective Date.

**Oversecured:** The term describing the Allowed Claim of a secured Creditor when the value of the collateral securing said Allowed Claim exceeds the amount of the debt serving as the basis for said Allowed Claim.

**Person:** Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

**Petitions:** The original petitions under Chapter 11.

**Petition Date:** The date on which Atomic Pest Control LLC's and John Nelson Beebe and Julie Ann Beebe's petitions were filed, April 13, 2009.

**Plan:** This Joint Plan of Reorganization and any amendments or supplements thereto.

**Plan Rate:** The rate of interest referred to in the Plan which is the prime rate.

Proof of Claim:  The proof of claim that must be filed by a holder of an Impaired Claim by the Bar Date.

Pro Rata:  The ratio of an Allowed Claim or Allowed Interest in a particular Class to the aggregate amount of all Allowed Claims or Allowed Interests in that Class.

Reorganized Debtors:  The Debtors after the Effective Date.

Residence:  The single family residence located at 1755 South Recker Road, Mesa, Arizona.

Tax Claim Rate:  The rate of interest, to be determined by the Bankruptcy Court at the Confirmation Hearing, that, when applied to the amount of an Allowed Priority Claim to be paid in installments will result in such installments being of an aggregate value, as of the Effective Date, equal to the Allowed amount of such Claim, consistent with the requirements of 11 U.S.C. §1129(a)(9).  At the Confirmation Hearing, the Debtors will request the Court determine that the Tax Claim Rate is five percent per annum.

Undersecured: The term describing the Allowed Claim of a secured Creditor when the value of the collateral securing said Allowed Claim is less than the debt which serves as the basis of said Allowed Claim.

Voting Deadline:  The voting deadline for voting to accept or reject this Plan, as determined by the Bankruptcy Court.

## II.     CLASSIFICATION OF CLAIMS AND INTERESTS.

### A.     Class 1 – Beebes

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims related to Beebes).

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8) (Tax Claims related to Beebes).

Class 1-C consists of the Allowed Secured Claim of Maricopa County related to the Residence.

Class 1-D consists of the Allowed Secured Claim of Downey Savings & Loan Association, F.A. related to the Residence.

Class 1-E consists of the Allowed Secured Claim of JP Morgan Chase Bank N.A. related to its lien on the Residence.

Class 1-F consists of the Allowed Secured Claim of National Bank of Arizona N.A. related to its lien on the Residence.

Class 1-G consists of the Allowed Secured Claim of Robert and Julie Duffin related to their lien on the Residence.

Class 1-H consists of the Allowed Secured Claim of American Honda Finance related to its lien on the 2006 Honda Odyssey Van.

Class 1-I consists of the Allowed Secured Claim of Petekoff.

Class 1-J consists of the Allowed Unsecured Claims of Creditors of Beebes.

Class 1-K consists of the Allowed Interests of Beebes.

**B.      Class 2 – Atomic Pest Control LLC**

Class 2-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims related to Atomic).

Class 2-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8) (Tax Claims related to Atomic).

Class 2-C consists of the Allowed Secured Claim of National Bank of Arizona N.A. related to its UCC-1 Financing Statement.

Class 2-D consists of the Allowed Secured Claim of JP Morgan Chase Bank N.A.

Class 2-E consists of the Allowed Unsecured Claims of Creditors of Atomic.

Class 2-F consists of the Allowed Interest of Atomic.

**III.      IMPAIRMENT OF CLASSES**

Classes 1-A, 1-B, 2-A, and 2-B, are unimpaired under the Plan.  All other classes are impaired, as that term is defined in 11 U.S.C. §1124.

**IV.      TREATMENT OF CLASSES**

**A.      Class 1 – Beebes**

**1.      Class: 1-A – Administrative Claims of Beebes**

Class 1-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims) related to the Beebes.  Unless they agree to an alternative form of treatment, the Allowed Claims of Class 1-A shall be paid in full, in cash, by the earlier of the

7

Effective Date or the date that such are allowed and ordered paid by the Court. Any Class 1-A Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class. The Allowed Administrative Claim of counsel for the Debtors that has not been paid as of the Effective Date, shall be paid in monthly payments of principal and interest, with interest at 8%, until paid in full.

### 2. **Class: 1-B – Tax Claims Related to Beebes**

Class 1-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8)-tax claims of the Beebes. As provided in 11 U.S.C. §1129(a)(9)(C), unless they agree to an alternative form of treatment, the Allowed Priority Claims of Class 1-B shall be paid in full, in cash, in regular installment payments of a total value, as of the Effective Date of the Plan, equal to the Allowed Priority Claim, over a period ending five (5) years after the Petition Date, and in a manner that is not less favorable than the most favored non-priority unsecured claim provided for by the Plan (other than cash payments made to a class of creditors under §1122(b)). Any Allowed Priority Claims will receive interest at the Tax Claim Rate. Any Class 1-B Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class.

### 3. **Class: 1-C – Maricopa County**

Class 1-C consists of the Allowed Secured Claim of Maricopa County as to the Beebes' Residence. Maricopa County filed a proof of claim with an estimated tax liability of $1,391.90. All real property taxes that became due prior to the Effective Date which were not paid as of the Effective Date, shall be paid in equal monthly installments over a period of six (6) months from the Effective Date. All real property taxes that became due prior to the Effective Date on the Residence shall bear interest at the State law rate from the date the taxes became due. The Reorganized Debtors shall pay any real property taxes on the Residence which accrue and become due after the Effective Date as said amounts become due and payable pursuant to State law. The Reorganized Debtors may prepay any of these Allowed Secured Claims at any time without penalty.

### 4. **Class: 1-D – Downey Savings & Loan Association, F.A.**

This Class consists of the Allowed Secured Claim held by Downey Savings & Loan Association, F.A. ("Downey") as to its first position secured interest in the Beebes' Residence pursuant to a Deed of Trust. Downey filed a secured proof of claim in the amount of $365,333.16.

The Beebes assert that Downey's Claim is in first position on the Residence. Downey shall retain its lien on the Residence. Downey's Allowed Secured Claim shall be allowed at the value of the Residence minus all secured debt that is senior to Downey's lien position. The Beebes believe the current value of the Residence is $315,000.00 based on the current market and comparative sales. Thus Downey's Allowed Secured Claim is $313,608.10 ($315,000.00 minus $1,391.90 owing in real property taxes to Maricopa County). This obligation will be reamortized over 30 years beginning as of the Effective Date at the Allowed Secured Claim and paid in equal monthly payments of principal and interest, with interest at the contract rate of 4%, plus the funds necessary for the escrow account for real property taxes and insurance, with a balloon payment required five years after the Effective Date. Further, the escrow account will remain in place for the payment of real property taxes and insurance and any funds in the escrow account on the Petition Date will be used for that purpose. The Beebes may prepay this obligation without penalty at any time. Downey shall release its lien in the Residence once its Allowed Secured Claim has been paid. The Beebes may sell the Residence at any time without penalty so long as the balance owing on Downey's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Downey's Allowed Claim shall be treated in accordance with Class 1-J.

### 5. Class: 1-E – JP Morgan Chase Bank, N.A.

This Class consists of the Allowed Secured Claim held by JP Morgan Chase Bank, N.A. ("Chase") which is secured by a deed of trust in the Beebes' Residence. The Beebes anticipate that they will reach a stipulation with Chase concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Chase filed a secured proof of claim in the amount of $94,883.54. The Beebes assert that Chase's Claim is in second position on the Residence junior to Downey. The Beebes believe the current value of the Residence is $315,000.00 based on the current market and comparative sales. Chase's Allowed Secured Claim would be allowed at the value of the Beebes' Residence minus all senior secured claims. As a result, Chase's Allowed Secured Claim is $0.00 ($315,000.00 value minus $1391.90 owing in real property taxes to Maricopa County, minus

Downey's Allowed Secured Claim of $313,608.10). The balance of Chase's Allowed Claim shall be treated in accordance with Class 1-J.

### 6. Class: 1-F – National Bank of Arizona, N.A.

This Class consists of the Allowed Secured Claim held by National Bank of Arizona ("NBA") which is secured by a deed of trust in the Beebes' Residence. The Beebes anticipate that they will reach a stipulation with NBA concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. NBA filed a secured proof of claim in the amount of $163,143.24. The Beebes assert that NBA's Claim is in third position on the Residence junior to Maricopa County, Downey and Chase. The Beebes believe the current value of the Residence is $315,000.00 based on the current market and comparative sales. NBA's Allowed Secured Claim would be allowed at the value of the Beebes' Residence minus all senior secured claims. As a result, NBA's Allowed Secured Claim is $0.00 ($315,000.00 value minus $1391.90 owing in real property taxes to Maricopa County, minus Downey's Allowed Secured Claim of $313,608.10, minus Chase's Allowed Secured Claim of $0). The balance of NBA's Allowed Claim shall be treated in accordance with Class 1-J.

### 7. Class: 1-G – Robert and Julie Duffin

This Class consists of the Allowed Secured Claim held by Robert and Julie Duffin (jointly, "Duffin") which is secured by a deed of trust on the Beebes' Residence. The Beebes anticipate that they will reach a stipulation with Duffin concerning the treatment of their Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. The Beebes assert that Duffin's Claim is in fourth position on the Residence junior to Maricopa County, Downey and Chase, and that Duffin may have other collateral securing their Claim. Duffin filed a secured proof of claim in the amount of $450,000.00. The Beebes assert Duffin's Allowed Secured Claim is $60,000.00. Duffin shall retain their lien on the same collateral and will be paid their Allowed Secured Claim as follows: Duffin's Allowed Secured Claim will be paid in equal monthly payments of principal and interest at 4% per annum and

amortized over 5 years. The Beebes may prepay this obligation without penalty at any time. Duffin shall release any and all liens once their Allowed Secured Claim has been paid. The Beebes may sell any of the collateral securing Duffin's Allowed Secured Claim at any time without penalty so long as the balance owing on Duffin's Allowed Secured Claim is satisfied out of the sale proceeds. The balance of Duffin's Allowed Claim shall be treated in accordance with Class 1-J.

**8.  Class: 1-H – American Honda Finance**

This Class consists of the Allowed Secured Claim held by American Honda Finance ("Honda") that is secured by a first position interest in a 2006 Honda Odyssey Van. Honda filed a secured proof of claim in the amount of $21,920.11. The Beebes anticipate that they will reach a stipulation with Honda concerning the treatment of its Claim associated with this vehicle. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. The Beebes assert that the value of the vehicle and Honda's Allowed Secured Claim is $17,660.00. Honda will retain its first position lien on the vehicle and will be paid its Allowed Secured Claim as follows: This obligation will be reamortized at the Allowed Secured Claim amount as of the Petition Date. The Beebes will pay the present monthly payment in the amount as is reflected in the terms of the pre-petition loan agreement from and after the Petition Date. The Allowed Secured Claim will continue to bear interest at standard contract rate of interest from and after the Petition Date. Once the Allowed Secured Claim plus accrued Post-Petition Date interest has been paid, Honda shall release its lien on the vehicle and receive no further payments on its Allowed Claim. This obligation may be pre-paid without penalty. The balance of Honda's Allowed Claim shall be treated in accordance with Class 1-J.

**9.  Class: 1-I – Petkoff**

This Class consists of the Allowed Secured Claim held by Toni and Melissa Petkoff (jointly, "Petkoff"). The Beebes anticipates that they will reach a stipulation with Petkoff concerning the treatment of their Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Petkoff filed a secured proof of claim in the amount of $320,491.12. The Petkoff's proof of claim fails to identify any

11

collateral securing the Petkoff's Claim. The Beebes are unaware of any collateral securing Petkoff's Claim and have filed an objection to the secured nature of the Claim. Thus, the Debtors assert that the value of Petkoff's Allowed Secured Claim is $0.00. The balance of Petkoff's Allowed Claim, if any, shall be treated in accordance with Class 1-J.

### 10.    Class: 1-J – General Unsecured Claims of the Beebes

Class 1-J consists of the Allowed Unsecured Claims of Creditors of the Beebes. Class 1-J Creditors shall be paid a pro-rata share from the Beebes' Excess Cash Flow, on a quarterly basis, in an amount sufficient to fund the value of the Beebes' Liquidation Equity (as calculated in the Debtors' Disclosure Statement). In light of the anticipated amount owed to Allowed Administrative Claims and Allowed Priority Claims, the Beebes anticipate that there would not be any required distribution to general unsecured Claims. Nonetheless, the Beebes will distribute to the Allowed Unsecured Claims a pro-rata share of the Beebes' Liquidation Equity as calculated in the Debtors' Disclosure Statement. Any Allowed Unsecured Claims that are determined to be non-dischargeable will continue to receive a pro-rata distribution of the Excess Cash Flow after all senior Allowed Claims have been paid, until satisfied in full.

### 11.    Class: 1-K – Allowed Interests of the Beebes

Pursuant to §1129(a)(15) and (b)(2)(B)(ii) of the Bankruptcy Code, the Beebes shall retain their interest in all estate property in consideration of their funding of Allowed Claims and shall receive all exempt property.

### B.    Class 2 – Atomic Pest Control LLC

### 1.    Class 2-A – Administrative Claims of Atomic Pest Control LLC

Class 2-A consists of Allowed Priority Claims under 11 U.S.C. §507(a)(2) (Administrative Claims) related to Atomic. Unless they agree to an alternative form of treatment, the Allowed Claims of Class 2-A shall be paid in full, in cash, by the earlier of the Effective Date or the date that such are allowed and ordered paid by the Court. Any Class 2-A Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class. The Allowed Administrative Claim of counsel for Atomic that has not been paid as of the Effective Date, shall be paid in monthly payments of principal and interest by the Beebes, with interest at 8%, until paid in full.

### 2. Class 2-B – Tax Claims Related to Atomic Pest Control LLC

Class 2-B consists of Allowed Priority Claims under 11 U.S.C. §507(a)(8)-tax claims of Atomic. As provided in 11 U.S.C. §1129(a)(9)(C), in full satisfaction of their Allowed Priority Claims, Class 2-B will receive a pro-rata distribution of the liquidation of any assets of Atomic's bankruptcy estate after all senior claims have been paid in full. Any Allowed Priority Claims will receive interest at the Tax Claim Rate. Any Class 2-B Claim not allowed as of the Effective Date shall be paid as soon thereafter as they are allowed by the Court according to the terms of this Class.

### 3. Class 2-C – Allowed Secured Claim of National Bank of Arizona, N.A.

This Class consists of the Allowed Secured Claim held by National Bank of Arizona, N.A. ("NBA") which is secured by a UCC-1 Financing Statement in all of Atomic's business assets. NBA filed a secured proof of claim in the amount of $163,143.23. Atomic anticipates that it will reach a stipulation with NBA concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Atomic assert that the value of the business assets and NBA's Allowed Secured Claim is $163,143.23. NBA will retain its first position lien on the business assets and will be paid its Allowed Secured Claim as follows: Two of the vehicles (a 2002 Nissan Frontier and a 2000 Toyota Tacoma) securing NBA's Allowed Secured Claim have been totaled and are subject to an insurance claim. These insurance proceeds ($6,200.00 for the Frontier and $ 3,026.56 for the Tacoma) will be paid over by the insurance company directly to NBA and applied to the principal balance owing on the Allowed Secured Claim as of the Effective Date. The balance of the Allowed Secured Claim of $154,343.23 will be reamortized as of the Effective Date, amortized over 30 years, with interest at 4%, and paid in monthly payments of principal and interest. Once the Allowed Secured Claim plus accrued Post-Effective Date interest has been paid, NBA shall release its lien on all collateral and receive no further payments on its Allowed Claim. This obligation may be pre-paid without penalty.

### 4. Class 2-D – Allowed Secured Claim of JP Morgan Chase Bank N.A.

This Class consists of the Allowed Secured Claim held by JP Morgan Chase Bank N.A. ("Chase"). Atomic anticipates that it will reach a stipulation with Chase concerning the treatment of its Allowed Secured Claim. In the event such a stipulation is reached, it is specifically incorporated herein, and to the extent of any inconsistency between the terms of the stipulation and the terms of the Plan, the terms of the stipulation control. Chase filed a secured proof of claim in the amount of $44,606.90, and reflected that its Claim is secured by "other" although Chase failed to identify any collateral securing its Claim. Atomic is unaware of any collateral securing Chase's Claim and will file an objection to the secured nature of the Claim if necessary. Thus, Atomic assert that the value of Chase's Allowed Secured Claim is $0.00. The balance of Chase's Allowed Claim shall be treated in accordance with Class 2-E.

5. **Class 2-E – Allowed Unsecured Claims of Creditors of Atomic Pest Control LLC**

Class 2-E consists of the Allowed Unsecured Claims of Creditors of Atomic. Class 2-E Creditors shall be paid a pro-rata share from Atomic's Excess Cash Flow, on a quarterly basis, in an amount sufficient to fund the value of Atomic's Liquidation Equity (as calculated in the Debtors' Disclosure Statement). In light of the anticipated amount owed to Allowed Administrative Claims and Allowed Priority Claims, Atomic anticipates that there would not be any required distribution to general unsecured Claims. Nonetheless, Atomic will distribute to the Allowed Unsecured Claims a pro-rata share of Atomic's Liquidation Equity as calculated in the Debtors' Disclosure Statement.

6. **Class 2-F – Allowed Interest of Atomic Pest Control LLC**

Class 2-F consists of the Allowed Interests of Atomic held by the Beebes. The Beebes bankruptcy estate will receive any remaining liquidation proceeds of the Atomic estate after all senior Allowed Claims have been paid in full. Atomic does not anticipate that there will be any distribution to this Class. The Beebes shall retain their Allowed Interests in Atomic.

V. **MEANS FOR EXECUTING THE PLAN**

A. **Funding**

Pursuant to §1123(a)(8) of the Bankruptcy Code, the Debtors shall provide for the payment to creditors under their Plan of all or such portion of earnings from personal services

14

performed by the Beebes after the commencement of the case or other future income of the Beebes, and the profits generated by Atomic in its normal business operations, as is necessary for the execution of the Plan. The Debtors will contribute their Excess Cash Flow in an amount sufficient to fund the value of their Liquidation Equity.

**B.** **Liquidation of Estate Property.**

The Debtors shall have the authority to retain such brokers, agents, counsel, or representatives, as they deem necessary to liquidate all assets of the bankruptcy estate. Prior to Confirmation, the Debtors may sell their property pursuant to an order of the Bankruptcy Court to the highest and best bidder. Any sales which occur post-confirmation shall not require approval of the Bankruptcy Court for the sale, although the Debtors will be free to seek such order if it deems appropriate.

**C.** **Management**

The Reorganized Debtors will continue to operate under the same management structure utilized prior to Confirmation.

**D.** **Disbursing Agent.**

The Reorganized Debtors shall act as the Disbursing Agent under the Plan.

**E.** **Documentation of Plan Implementation.**

In the event any entity which possesses an Allowed Secured Claim or any other lien in any of the Debtors' property for which the Plan requires the execution of any documents to incorporate the terms of the Plan, fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtors may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of any necessary new liens to satisfy the terms of the Plan. For any Creditor asserting a secured interest in any property of the Debtors, for which no equity exists in the property for the benefit of the Creditor, the Creditor shall immediately upon the Effective Date of the Plan release its asserted secured interest in the property. If the Debtors deem advisable, they may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

**VI.** **EFFECT OF CONFIRMATION FOR ATOMIC**

Except as otherwise provided in the Plan or the Confirmation Order, Confirmation acts as a discharge, effective as of Confirmation, of any and all debts of the Debtors, that arose any time before the entry of the Confirmation Order including, but not limited to, all principal and all interest accrued thereon, pursuant to §1141(d)(1) of the Bankruptcy Code. The discharge shall be effective as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtors dealt with in this Plan shall be considered New Obligations of the Debtors, and these New Obligations shall not be considered in default unless and until the Reorganized Debtors default on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtors and, once the Plan is confirmed, the only obligations of the Debtors shall be such New Obligations as provided for under the Plan.

## VII.   EFFECT OF CONFIRMATION FOR THE BEEBES

Because the Beebes are individuals, pursuant to § 1141(d)(5) of the Bankruptcy Code, Confirmation of the Plan does not provide the discharge for the Debtors. The Debtors will move for the entry of a final decree after the Debtors have provided for the implementation of the Plan, and the final decree will contain the language providing the Debtors their discharge and such final decree will discharge any and all debts of the Debtors, that arose any time before the entry of the Confirmation Order, including, but not limited to, all principal and all interest accrued thereon, pursuant to § 1141(d) of the Bankruptcy Code. The discharge shall be effective as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtors dealt with in this Plan shall be considered New Obligations of the Debtors, and these New Obligations shall not be considered in default unless and until the Reorganized Debtors default on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtors and, once the Plan is

confirmed, the only obligations of the Debtors shall be such New Obligations as provided for under the Plan.

## VIII. OBJECTIONS TO AND ESTIMATIONS OF CLAIMS

### A. Objections and Bar Date for Filing Objections.

As soon as practicable, but in no event later than 120 days after the Effective Date, objections to Claims shall be filed with the Bankruptcy Court and served upon the Debtors and the holders of each of the Claims to which objections are made pursuant to the Bankruptcy Code and the Bankruptcy Rules. Objections filed after such date will be barred.

### B. Settlement of Claims.

Settlement of any objection to a Claim not exceeding $10,000 shall be permitted on the eleventh (11th) day after notice of the settlement has been provided to the Debtors, the Creditors, the settling party, and other persons specifically requesting such notice, and if on such date there is no written objection filed, such settlement shall be deemed approved. In the event of a written objection to the settlement, the settlement must be approved by the Court on notice to the objecting party.

### C. Estimation of Claims.

For purposes of making distributions provided for under the Plan, all Claims objected to shall be estimated by the Disbursing Agent at an amount equal to (i) the amount, if any, determined by the Court pursuant to §502(c) of the Bankruptcy Code as an estimate for distribution purposes; (ii) an amount agreed to between the Debtor and the Claimant; or, (iii) that amount set forth as an estimate in the Plan or Disclosure Statement. Notwithstanding anything herein to the contrary, no distributions shall be made on account of any Claim until such Claim is an Allowed Claim.

### D. Unclaimed Funds and Interest.

Distribution to Claimants shall be mailed by the Reorganized Debtors to the Claimants at the address appearing on the master mailing matrix unless the Claimant provides the Reorganized Debtors with an alternative address. For a period of one year from the date that a distribution was to be made by the disbursing agent but has gone uncollected by the Claimant, the disbursing agent shall retain any distributions otherwise distributable hereunder which remain

unclaimed or as to which the disbursing agent has not received documents required pursuant to the Plan. Thereafter, the unclaimed funds shall revest in the Reorganized Debtors.

## IX. NONALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of, and no other Allowed Claim, whether secured, unsecured, administrative, or priority, shall include any fine, penalty, exemplary or punitive damages, late charges, default interest or other monetary charges relating to or arising from any default or breach by the Debtors, and any Claim on account thereof shall be deemed disallowed, whether or not an objection was filed to it.

## X. CLOSING OF CASE

Until this case is officially closed, the Reorganized Debtors will be responsible for filing pre- and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. §1930, as amended. Pursuant to 11 U.S.C. §1129(a)(12), all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## XI. MODIFICATION OF THE PLAN

In addition to their modification rights under §1127 of the Bankruptcy Code, the Debtors may amend or modify this Plan at any time prior to Confirmation without leave of the Court. The Debtors may propose amendments and/or modifications of this Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtors may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of this Plan.

## XII. JURISDICTION OF THE COURT

The Court will retain jurisdiction until this Plan has been fully consummated for including, but not limited to, the following purposes:

1. The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtors to object to or

examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtors' rights to object to or to re-examine the Claim in whole or in part.

2.    To determine any Claims which are disputed by the Debtors, whether such objections are filed before or after Confirmation, to estimate any Unliquidated or Contingent Claims pursuant to 11 U.S.C. §502(c)(1) upon request of the Debtors or any holder of a Contingent or Unliquidated Claim, and to make determination on any objection to such Claim.

3.    To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtors and any other party, including but not limited to, any rights of the Debtors to recover assets pursuant to the provisions of the Bankruptcy Code.

4.    The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in this Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan.

5.    The modification of this Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

6.    To enforce and interpret the terms and conditions of this Plan.

7.    The entry of an order, including injunctions, necessary to enforce the title, rights and powers of the Debtors, and to impose such limitations, restrictions, terms and conditions of such title, right and power that this Court may deem necessary.

8.    The entry of an order concluding and terminating this case.

## XIII.   RETENTION AND ENFORCEMENT OF CLAIMS

Pursuant to §1123(b)(3) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce any and all claims of the Debtors, except those claims specifically waived herein.

## XIV.   EXECUTORY CONTRACTS

Atomic assumes the lease with CIT Technology Financing Services, Inc. and rejects all executory contracts and unexpired leases not otherwise assumed herein or by separate order of the Court. Claims for any executory contracts or unexpired leases rejected by the Debtors shall be filed no later than ten (10) days after the earlier of Confirmation or the date the executory contract or

unexpired lease is specifically rejected. Any such Claims not timely filed and served shall be disallowed.

## XV.   **REVESTING**

Except as provided for in the Plan or in the Confirmation Order, on the Effective Date the Reorganized Debtors shall be vested with all the property of the estate free and clear of all claims, liens, charges, and other interests of Creditors, arising prior to the Effective Date. Upon the Effective Date, the Reorganized Debtors shall operate their business free of any restrictions.

DATED this _____ day of _____, 2009.

AIKEN SCHENK HAWKINS & RICCIARDI P.C.

By _____
D. Lamar Hawkins
4742 North 24th Street
Suite 100
Phoenix, Arizona 85016-4859
Attorneys for Debtor

ATOMIC PEST CONTROL LLC

By:   John N. Beebe
Its:   President

_____
John Nelson Beebe

_____
Julie Ann Beebe

COPY of the foregoing mailed, or served
via electronic notification* or fax** or if so marked,
this _____ day of _____, 2009 to:

U.S. TRUSTEE'S OFFICE
230 N. First Ave., Ste. 204
Phoenix, AZ 85003-1706

_____
S:\AtomicPestControl\2800401\Pleadings\Plan.doc

20

| | | | Scheduled as Unknown/ | | | | |
|---|---|---|---|---|---|---|---|
| | John and Julie Beebe | | | | | | |
| | Chapter 11 No. 09-07236-RJH | | | | | | |
| | | | | | | | |
| | Claims Analysis | | | | | | |
| | | | | | | | |
| | | Scheduled | Scheduled as Unknown/ | | | POC | |
| Claim No | Creditor | Amount | Not Scheduled | Co-Debtor | C/U/D | Amount | Comments |
| | **Secured Creditors:** | | | | | | |
| 5 | American Honda Finance | $ 22,000.00 | | Atomic | | $ 21,920.11 | 2006 Odyssey Van |
| 9 | Downey Savings & Loan Assoc., F.A. | $ 549,745.55 | | | | $ 365,333.16 | x6530 |
| 1 | JP Morgan Chase Bank N.A. | $ 94,228.57 | | Atomic | | $ 94,883.54 | x5634 |
| 6 | Maricopa County | | Notice Only | | | $ - | |
| 3 | National Bank of Arizona | $ 158,608.79 | | Atomic | | $ 163,143.24 | x9001 |
| 11 | Robert & Julie Duffin | $ 450,000.00 | | | | $ 450,000.00 | |
| | US Bank | | Notice Only | | | | |
| | **Total Secured:** | 1,274,582.91 | | | | | |
| | | | | | | | |
| | | | | | | | |
| | **Priority Creditors:** | | | | | | |
| | AZ Dept. of Revenue | | | | | | |
| | AZ Dept. of Revenue | | | | | | |
| | IRS | | | | | | |
| | **Total Priority:** | $ - | | | | | |
| | | | | | | | |
| | | | | | | | |
| | **Unsecured Creditors:** | | | | | | |
| 2 | Bank of America | $ 20,363.24 | | | C/U | $ 21,401.62 | x6685 |
| | Bank of America | $ 13,709.61 | | | C/U | | x2601 |
| 12 | Capital One Bank (USA) N.A. | $ 4,245.83 | | | C/U | $ 5,335.61 | x3893 |
| | Edward & Judy Kemp | $ 57,000.00 | | | C/U | | |
| 13 | GE Money Bank/Ultimate Electronics | | Not Scheduled | | | $ 5,992.12 | x2327 |
| 10 | JP Morgan Chase Bank N.A. | $ 44,756.90 | | | C/U | $ 44,606.90 | x2002 |
| 7 | JP Morgan Chase Bank N.A. | $ 1,894.45 | | | C/U | $ 2,826.09 | x0980 |
| 8 | JP Morgan Chase Bank N.A. | $ 1,779.67 | | | C/U | $ 1,827.42 | x4752 |
| | JP Morgan Chase Bank N.A. | $ 2,089.83 | | | C/U | | x0001 |
| | L. Kieth Beebe | $ 24,000.00 | | | C/U | | John's father |
| | Sallie Mae Servicing | $ 30,731.00 | | | C/U | | x543-1 |
| | Steven J. Locnikar D.O. | | Notice Only | | C/U/D | | |
| 4 | Tony & Melissa Petkoff | $ 303,000.00 | | | C/U | $ 320,491.12 | |
| | Travelers 3P | | Notice Only | | C/U/D | | |
| | **Total Unsecured:** | $ 503,570.53 | | | | | |

EXHIBIT B

Atomic Pest Control LLC
Chapter 11 No. 09-07232-RJH

Claims Analysis

| Claim No | Creditor | Scheduled Amount | Scheduled as Unknown/ Not Scheduled | Co-Debtor | C/U/D | POC Amount | Comments |
|---|---|---|---|---|---|---|---|
| | **Secured Creditors:** | | | | | | |
| | JP Morgan Chase Bank N.A. | $ 2,089.83 | | | | | x0001 |
| 4 | JP Morgan Chase Bank N.A. | $ 44,756.90 | | | | $ 44,606.90 | x2002 |
| | Maricopa County | | Notice Only | | | | |
| 1 | National Bank of Arizona | $ 158,608.79 | | Beebes | | $163,143.24 | 1755 S. Recker Rd. |
| 7 | Robert Duffin | | | | | $450,000.00 | |
| | **Total Secured:** | **205,455.52** | | | | | |
| | | | | | | | |
| | | | | | | | |
| | **Priority Creditors:** | | | | | | |
| | AZ Dept. of Revenue | | | | | | |
| | AZ Dept. of Revenue | | | | | | |
| | IRS | | | | | | |
| | | | | | | | |
| | **Total Priority:** | $ - | | | | | |
| | | | | | | | |
| | | | | | | | |
| | **Unsecured Creditors:** | | | | | | |
| | Adiamo Telecom | $ 19.00 | | | C/U | | |
| | AT&T Advertising Solutions | $ 8,532.00 | | | C/U | | |
| | Bank of America | $ 20,861.00 | | | C/U | | x6685 |
| | Capital One Bank (USA) N.A. | $ 5,335.00 | | | C/U | | x3893 |
| | Chase Bank | $ 2,826.00 | | | C/U | | x0980 |
| | Chase Bank | $ 1,647.00 | | | C/U | | x4752 |
| 3 | CIT Technology Financing Services, Inc. | | | | | $ 12,667.49 | |
| 6 | Chemtech Supply, Inc. | $ 10,889.00 | | | C/U | $ 9,423.56 | |
| | Dex Media | $ 2,329.00 | | | C/U | | |
| | Edward & Judy Kemp | $ 57,000.00 | | | C/U | | |
| 2 | Idearc Media Corp. | $ 16,836.00 | | | C/U/D | $ 16,836.00 | x9876 |
| | **Total Unsecured:** | **$ 126,274.00** | | | | | |



EXHIBIT B